Paul KIEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0608–PC–392.

Court of Appeals of Indiana.

May 17, 2007.

J. Richard Kiefer, James J. Bell, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Following his three convictions for molesting his former girlfriend's five-year-old daughter, Paul Kien appeals the post-conviction court's denial of his petition for post-conviction relief. Specifically, Kien contends that his trial counsel was ineffective for failing to investigate and present evidence that he was not the one who molested the victim and for failing to challenge the victim's competency. Because the evidence that Kien claims shows that he did not molest the victim is inadmissible, trial counsel cannot be deemed ineffective for failing to investigate and present it. In addition, because there is no evidence that the victim was incompetent, trial counsel was not ineffective for failing to challenge her competency. We therefore affirm the post-conviction court.

### Facts and Procedural History

The facts underlying this appeal, taken from this Court's 2003 opinion in Kien's direct appeal, are as follows:

The incidents which led to the charges and the subsequent convictions arose out of allegations made by five-year-old J.F., the daughter of Kien's former live-in girlfriend[, Shellie Devlin]. During an interview conducted by Lori Harrington at the Elkhart Child and Family Advocacy Center, which was attended by Detective Terry [S]hmiel of the Elkhart Police Department, J.F. alleged that Kien had put his penis and tongue on her vagina "a lot." J.F. stated that these incidents occurred either in her mother's bedroom or by the basement door. J.F. also stated that during one incident, Kien put his penis in her vagina and that it hurt. On another occasion, she stated, Kien had forced her to suck his penis. J.F.'s [half-]brother, B.D., also stated that he witnessed one episode of molestation between J.F. and Kien.

J.F. was examined by a physician, Lynette Valentijn, who found that J.F.'s hymen had been "disrupted," or rather, was no longer intact. She also noted that there was increased vascularity to the posterior fourchette, the area beneath the hymen, which indicated that there had been a trauma which required more blood flow to aid in the healing process. A white mark was also present in the area, which could have been a scar from a cut.

Dr. Valentijn testified that all of these conditions were abnormal and were not the types of injuries which could have been caused by such things as a fall on a bicycle seat. According to Dr. Valentijn, these findings were all consistent with sexual abuse with penetration.

On June 5, 2000, Kien was charged with one count of Child Molesting [as a Class A felony], alleging sexual intercourse. On November 3, 2000, two additional counts of Child Molesting [as Class A felonies] were added. On January 23, 2001, the counts which were added on November 3 were amended to reflect that the second count alleged sexual intercourse and the third count alleged deviate sexual conduct by fellatio.

*Kien v. State*, 782 N.E.2d 398, 403–04 (Ind. Ct.App.2003), *reh'g denied, trans. denied.*

At his January 2001 jury trial, Kien's theory of defense was that Shellie Devlin ("Shellie"), J.F.'s mother and his former girlfriend, sought revenge against him, when he ended their relationship for the final time and moved out of the house on April 1, 1999, by taking out a credit card in his name. Then, when Kien reported the crime to the police, Shellie concocted a scheme to divert attention from the credit card investigation by accusing Kien of molesting her daughter, J.F., and in the process brought her children in on the scheme. Kien explained that every time he moved out of the house, "something revengeful would happen to [him]." Appellant's App. p. 212. The jury found Kien guilty of the three counts of Class A felony child molesting, and the trial court sentenced him to forty years for each count, to be served consecutively, for an aggregate term of 120 years.

On direct appeal, Kien raised several issues before this Court: (1) whether his constitutional rights were violated by the manner in which objections and arguments were made at the bench so that they could not be recorded; (2) whether the evidence is sufficient to support his convictions; (3) whether two suicide notes were improperly admitted for impeachment purposes; (4) whether the jury should have been instructed on a *mens rea* element for child molesting; (5) whether the trial court relied upon improper aggravating and mitigating circumstances in sentencing; and (6) whether his sentence is inappropriate. We affirmed Kien's convictions but remanded the case for his sentence to be reduced:

> Because the evidence did not necessarily establish that the acts occurred at significantly different times with Kien having time to reflect upon the heinous nature of the crimes committed, ordering that Kien serve consecutive sentences for the two convictions for child molesting by sexual intercourse is inappropriate.... The trial court is ordered to amend Kien's sentencing order to reflect that the sentences for Counts I and II, the convictions for child molesting by sexual intercourse, be served concurrently. The sentence is affirmed in all other respects.

*Kien*, 782 N.E.2d at 416–17. As a result, the trial court reduced Kien's sentence to eighty years. The Indiana Supreme Court denied Kien's petition to transfer.

In November 2004, Kien filed a petition for post-conviction relief, which has since been amended several times. A hearing on Kien's petition was held in April 2006, and the post-conviction court entered extensive findings of fact and conclusions thereon in August 2006 denying relief. Kien now appeals.

**Discussion and Decision**

 A defendant who has exhausted the direct appeal process may challenge the correctness of his convictions and sentence by filing a post-conviction petition. *Carew v. State*, 817 N.E.2d 281, 285 (Ind. Ct.App.2004), *trans. denied.* Post-conviction procedures do not provide an opportunity for a "super-appeal"; rather, they create a narrow remedy for subsequent collateral challenges to convictions that

must be based on grounds enumerated in the post-conviction rules. *Id.; see also Reed v. State,* 856 N.E.2d 1189, 1194 (Ind. 2006). Post-conviction proceedings are civil proceedings, so a defendant must establish his claims by a preponderance of the evidence. *Carew,* 817 N.E.2d at 285.

A petitioner who appeals the denial of post-conviction relief faces a rigorous standard of review. *Benefiel v. State,* 716 N.E.2d 906, 911 (Ind.1999), *reh'g denied.* The reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *Hall v. State,* 849 N.E.2d 466, 468 (Ind.2006). Furthermore, while we do not defer to the post-conviction court's legal conclusions, we accept its factual findings unless they are clearly erroneous. *Carew,* 817 N.E.2d at 285. To prevail on appeal, the petitioner must establish that the evidence is uncontradicted and leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Hall,* 849 N.E.2d at 469.

Kien raises several issues on appeal, only one of which we need to address. That is, Kien contends that his trial counsel was ineffective for three reasons: (1) failing to investigate and present additional evidence of Shellie's vindictive behavior; (2) failing to challenge J.F.'s competency; and (3) failing to investigate and present evidence that J.F.'s half-brother could have molested her.[1]

We review claims of ineffective assistance of trial counsel under the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Carew,* 817 N.E.2d at 285–86. First, the petitioner must demonstrate that counsel's performance was deficient because it fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Smith v. State,* 765 N.E.2d 578, 585 (Ind.2002), *reh'g denied.* Second, the petitioner must demonstrate that he was prejudiced by his counsel's deficient performance. *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002), *reh'g denied.* To demonstrate prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had not made the errors. *Id.* A probability is reasonable if our confidence in the outcome has been undermined. *Id.*

### I. Failure to Investigate and Present Additional Evidence of Shellie's Vindictive Behavior

Kien first argues that his trial counsel was ineffective for failing to investigate and present additional evidence of Shellie's vindictive behavior, which would have bolstered his defense theory that Shellie, in conjunction with her children, fabricated the child molesting allegations against him.[2] At the post-conviction hear-

---

1. Kien also raises claims of newly discovered evidence and cumulative effect of errors. Even if the evidence of Shellie's vindictive behavior and the possibility that J.F.'s half-brother could have molested her meets the requirements for newly discovered evidence, because we conclude below that the evidence is inadmissible, this claim fails. In addition, because we find no deficiency on the part of trial counsel, Kien's cumulative effect of errors claim also fails.

2. Kien also argues that his trial counsel was ineffective for failing to introduce the fraudulent credit card application that Shellie filled out using his name. Although Kien's trial counsel did not introduce the actual application, counsel did present evidence regarding this incident at trial. Specifically, counsel presented evidence that after Kien ended his relationship with Shellie, she took out a credit card in his name, which he reported to the police. Six months later, he was accused of

ing, Kien presented this additional evidence, which the post-conviction court summarized as follows:

> Evidence was presented at the [post-conviction] hearing . . . that the victim's mother threatened former lovers with vindictive acts following breakdowns in her relationships with them. Specifically, Jack Daryl Devlin, Sr. ("Jack, Sr."), [Shellie's ex-husband,] said Shellie threatened to accuse him of abusing the children if he stopped supporting her. Jack, Sr. also testified that Shellie applied for three or four credit cards in his name without his permission and, that he did not discover that fact until he received delinquent notices and statements. In addition, Richard Lewis Wheeler testified that he was involved in a relationship with Shellie after her marriage to Jack, Sr. ended. That relationship began sometime in 1987 and continued through 1988, when he joined the army. Mr. Wheeler said he worked and supported Shellie's children while he lived with Shellie, but stopped sending her money when he joined the army. No children were born to the couple. Shellie falsely named him as the father of a child when she later became pregnant. He also testified that Shellie obtained a JC Penney credit card in his name which he did not discover until 1991, when he applied for a home mortgage. Timothy Allen Flock testified that only [J.F.], the victim, is his child. He testified that when he broke off his relationship with Shellie, she accused him of physically abusing [C.D.] Finally, he averred that Shellie asked him to lie to a judge, saying that [B.D.] was his child. . . . Evidence was presented to the effect that Shellie made several attempts to persuade her children to lie about

matters unrelated to this trial. These efforts produced varied results.

Appellant's App. p. 150–51 (formatting altered). The post-conviction court concluded that the above evidence was inadmissible and therefore trial counsel was not ineffective for failing to investigate and present it at Kien's jury trial:

> Indiana Evidence Rule 404(b) is customarily used by criminal defendants to seek exclusion of evidence about their own prior bad acts. Under what has come to be called "reverse 404(b) evidence", courts have held that a defendant can introduce evidence of someone else's conduct if it tends to negate the defendant's guilt, and if one of the exceptions of 404(b) applies. *See, e.g., Garland v. State,* 788 N.E.2d 425, 429 (Ind.2003). . . .

> In the instant case, the incidents relied upon by the defendant and the alleged misconduct on the part of [Shellie] Devlin with respect to the defendant were separated by a significant amount of time. In addition, the alleged acts of misconduct and the offered bad acts were not sufficiently similar or connected to the crimes charged. The offered earlier bad acts are not tangibly connected to the present case, and Shellie Devlin's propensity to behave a certain way is not admissible to prove the defendant did not commit the crime at issue. This is precisely the type of evidence Rule 404(b) is intended to exclude. Furthermore, the proffered evidence is related to the acts of the victim's mother, not the victim, and her prior bad acts as presented by defendant do not tend to prove any disputed fact in the instant case. Nothing indicates that the offenses charged arose out of Shellie Devlin's behavioral patterns with former

molesting J.F. Because this evidence was presented to the jury, trial counsel was not ineffective for failing to introduce the actual application.

boyfriends or from her relationships with her children. Defense counsel cannot be said to be ineffective for failing to present evidence that would have been deemed inadmissible at trial.

*Id.* at 153–55 (formatting altered).

 On appeal, Kien asserts that contrary to the post-conviction court's conclusion, the evidence of Shellie's vindictiveness in her past romantic relationships was admissible and therefore trial counsel was ineffective for failing to investigate and present it at his jury trial. Our starting point is Indiana Evidence Rule 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The Indiana Supreme Court addressed "reverse 404(b)" evidence in *Garland v. State*, 788 N.E.2d 425 (Ind.2003). In that case, our Supreme Court held that contrary to earlier case law, Evidence Rule 404(b) applies "to evidence about the bad acts of non-parties." *Id.* at 429. The court explained, "First, the text of Rule 404(b) is such that it governs evidence about acts by defendants, and non-defendants. Second, the rule acts as an appropriate restraint on admissibility of evidence about events or acts that are by definition largely extraneous to those for which a defendant is on trial." *Id.* In order for evidence about the bad acts of non-defendants to be admissible, though,

one of the exceptions of Rule 404(b) must apply.[3] *Id.* at 430.

Kien claims that the evidence of Shellie's vindictiveness in her past romantic relationships was admissible to demonstrate Shellie's motive, an exception under Rule 404(b). We first point out that Shellie is not the one who made the child molesting allegations in this case. In fact, Shellie did not testify at either Kien's jury trial or the post-conviction hearing. Even if one of the exceptions is satisfied, the balancing test of Indiana Evidence Rule 403 must be applied. *See Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind.2003); *Burks v. State*, 838 N.E.2d 510, 519 (Ind.Ct.App.2005), *trans. denied.* Evidence Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

With regard to motive, "evidence of an extrinsic act that is too remote or unrelated to the events at issue may be rendered inadmissible by the balance between probative value and the risk of unfair prejudice." 12 Robert Lowell Miller, Jr., Indiana Practice, § 404.212 (2d ed.1995); *see also Bassett*, 795 N.E.2d at 1053 (finding evidence "too strained and remote" to be admissible under motive exception); *Spencer v. State*, 703 N.E.2d 1053, 1056 (Ind.1999) ("The probative value of the evidence [of motive] may lose force, however, if too much time has elapsed between

---

**3.** Our Supreme Court noted that "[w]here a defendant has probative, admissible evidence that [someone else committed the crime], regular due process would admit the evidence." *Garland*, 788 N.E.2d at 430. However, if the defendant "has little or no direct evidence" that someone else did it, then one of the

exceptions of Rule 404(b) must apply. *Id.* Because the evidence of Shellie's vindictiveness in her past romantic relationships is not direct evidence that someone other than Kien molested J.F., the evidence is not constitutionally required, contrary to Kien's argument on appeal. *See* Appellant's Br. p. 22.

the prior acts and the crime charged[, in this case, three years].").

Here, the evidence of Shellie's vindictiveness in her past romantic relationships is too remote and unrelated to the current crimes to be admissible. Jack Devlin, Sr., Shellie's ex-husband and father to three of her children, testified at the post-conviction hearing that they divorced in 1987, approximately twelve years before the offenses in this case. Devlin testified that after their divorce, Shellie threatened to accuse him of abusing the children if he did not send her money. Although Devlin testified that Shellie took out credit cards in his name, it occurred during their marriage. Richard Lewis Wheeler testified at the post-conviction hearing that his relationship with Shellie was in 1987–88, approximately eleven years before the offenses in this case. Wheeler testified that after their relationship ended, Shellie took out credit cards in his name. She did not lodge any allegations of abuse or molest of her children against him. Timothy Allen Flock, Shellie's ex-boyfriend and father of J.F., testified at the post-conviction hearing that Shellie accused him of spanking C.D., Shellie's son, with a paddle. No time frame was given, and Flock did not deny spanking C.D.

None of the evidence of Shellie's vindictiveness in her past romantic relationships involves allegations that the men *molested* any of her children. At most, Shellie alleged that two of the men *abused* her children. And at least two of the relationships ended more than a decade before the offenses in this case even occurred. Given the remoteness of these acts and the fact that they are not related to Kien's convictions in this case for *molesting J.F.*, the probative value of this evidence is substantially outweighed by not only the danger of unfair prejudice, but also by confusion of the issues and undue delay. Therefore, the evidence would not have been admissible at Kien's jury trial.[4] As such, we cannot conclude that trial counsel was ineffective for failing to investigate and present it.

## II. Failure to Challenge J.F.'s Competency

Second, Kien argues that his trial counsel was ineffective for failing to challenge J.F.'s competency. Specifically, Kien asserts that J.F., who was six years old at the time of trial, "could not recite substantial details of the alleged incident, gave inconsistent accounts of the alleged crime and admitted to lying under oath." Appellant's Br. p. 24. The post-conviction court made the following finding regarding this issue:

[A]t the time of trial [J.F.], the victim, was six (6) years old. Trial record reflects that [defense counsel] rigorously cross examined her with respect to contradictions in her trial testimony and discrepancies between her trial and deposition testimony. There is nothing to suggest that her competence to testify

---

4. Kien also argues that his trial counsel was ineffective for failing to investigate and present evidence that Shellie made her children lie about several matters unrelated to his trial. For example, Kien points to testimony from H.D., Shellie's daughter, who testified at the post-conviction hearing that approximately fourteen years before, her mother asked her to lie in the course of a custody battle and tell a social worker that Timothy Flock did not live with them. H.D. added that her mother never asked her to lie to anyone else though. In addition, Kien points to testimony from April Powers, Richard Wheeler's sister, who testified at the post-conviction hearing that she observed Shellie ask two of her children, J.D. and H.D., to lie on several occasions when they were much younger. This evidence is even more strained than the evidence of Shellie's vindictiveness in her past romantic relationships and therefore is inadmissible as well.

should have been called into question and nothing to suggest that such tactic would have been productive.

Appellant's App. p. 151. As such, the post-conviction court concluded:

> In this case, the trial record shows that the victim was questioned extensively about whether she knew the difference between telling the truth and a lie. Examples were proposed to her and she was asked if they were a lie or the truth. She was also asked if she understood why certain of these examples was a lie and the consequences of telling a lie. Specifically, the victim demonstrated that she understood the difference between telling the truth and telling a lie when she stated it would be a lie for counsel to say that he had long, curly, red hair. She showed she knew that she was under a compulsion to tell the truth when she said that for her to say counsel's hair was long, red, and curly, she was lying and that what happens when one lies is that one gets into trouble. The victim was further questioned during cross-examination as to whether she understood what it means to be under oath. There was sufficient evidence presented at trial to show that the victim was competent as a matter of law, and absolutely nothing to indicate that her competency was an issue. Therefore, defense counsel was not ineffective for failing to challenge the victim's competency.

*Id.* at 155–56 (record citations omitted).

 According to the Indiana Rules of Evidence, "[e]very person is competent to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly."[5] Ind. Evidence Rule 601. A child's competency to testify at trial is established by demonstrating that he or she (1) understands the difference between telling a lie and telling the truth, (2) knows he or she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Richard v. State,* 820 N.E.2d 749, 755 (Ind.Ct.App.2005), *trans. denied, cert. denied,* —— U.S. ——, 126 S.Ct. 1034, 163 L.Ed.2d 856 (2006). "To be qualified to testify, a child need not be a model witness, have an infallible memory, or refrain from making inconsistent statements." *Casselman v. State,* 582 N.E.2d 432, 435 (Ind.Ct.App.1991).

Here, J.F.'s testimony at trial shows that she understood the difference between a truth and a lie, knew she was under compulsion to tell the truth, and knew what a true statement was. The fact that J.F.'s testimony could be interpreted as inconsistent and the fact that she admitted to not testifying truthfully[6] goes to her credibility, not her competency. *See Harrington v. State,* 755 N.E.2d 1176, 1181 (Ind.Ct.App.2001). As such, the jury was free to disregard J.F.'s testimony if it felt she was not a credible witness. *See id.* Because there is no evidence that J.F. was incompetent, trial counsel cannot be deemed ineffective for failing to challenge her competency.

### III. Failure to Investigate and Present Evidence that J.F.'s Half–Brother Could Have Molested Her

 Finally, Kien argues that his trial counsel was ineffective for failing to inves-

---

5. "A child under ten years old was formerly presumed to be incompetent to testify, but the statute setting forth the presumption was repealed in 1990." *Aldridge v. State,* 779 N.E.2d 607, 609 (Ind.Ct.App.2002), *trans. denied.*

6. For example, Kien cites a portion of J.F.'s testimony where she admitted on cross-examination that she was "lying just now when [she] told [defense counsel] [she] couldn't remember" whether Kien "put his pee-pee in [her] private part or just up against it." Appellant's App. p. 197.

tigate and present evidence that J.F.'s half-brother, J.D., could have molested her. The post-conviction court made the following finding with respect to this issue:

> At the [post-conviction] hearing ..., some evidence was presented to establish that [J.D.], a half-brother of the victim, engaged in homosexual experimentation with a younger sibling when [J.D.] was approximately ten years of age.... No evidence was presented to the effect that the victim was molested by anyone other than the defendant. At most, it was established that ... [J.D.] was involved in an unrelated sex act with another person.

Appellant's App. p. 150. Finding that the evidence regarding J.D. was "tenuous" and "speculati[ve]," the trial court concluded that it was not admissible and therefore trial counsel was not ineffective for failing to investigate and present it at Kien's jury trial. *Id.* at 153. This issue again implicates our Supreme Court's opinion in *Garland* and its discussion of reverse 404(b) evidence.

Conceding that he does not have direct evidence that J.D. molested J.F., *see* P–C Tr. p. 63, Kien's main argument on appeal is that the evidence relating to J.D.'s molestation of a younger, male sibling was admissible to prove the "identity" of the "true perpetrator of th[ese] crime[s]," an exception under Rule 404(b). Appellant's Br. p. 35; *see also supra* note 3. At the

post-conviction hearing, J.D., who was twenty-four years old at the time, testified that he engaged in sexual activity with his younger brother C.D., who is six years younger than him, on three occasions when he was approximately ten and twelve years old and that he was adjudicated a juvenile delinquent as a result.[7] No details of the actual adjudication were given, including dates and underlying offenses. However, J.D. denied having sexual contact with J.F., who is approximately fourteen years younger than him. P–C Tr. p. 71.

We find that the testimony regarding J.D.'s conduct twelve and fourteen years earlier involving his brother, and not involving the present victim, his sister, does not bear sufficient similarities to support a reasonable inference that he is the one who committed the crimes here. *See Bassett,* 795 N.E.2d at 1053. These were not "signature" crimes, nor are they "strikingly similar."[8] *See Bassett,* 795 N.E.2d at 1053; *Garland,* 788 N.E.2d at 431; *see also* 12 Robert Lowell Miller, Jr., Indiana Practice, § 404.220 (2d ed. 1995) ("Indiana cases in which scheme or plan evidence was used as proof of identity have stressed that the features common to the offenses must be unique, distinctive and unusual to justify admission of such evidence."). The evidence does not fit the identity exception of Rule 404(b) and therefore would have been inadmissible at Kien's jury trial. As such, we cannot conclude that trial counsel was ineffective for

---

**7.** J.D. testified that on the first occasion, he viewed a pornographic magazine depicting homosexual activity. Then, J.D. and C.D. took a bath together, at which point J.D. "put [his] penis between [C.D.'s] legs and rubbed back and forth." P–C Tr. p. 67. The second incident involved J.D.'s request for oral sex from C.D., and the third incident involved activity similar to the first.

**8.** We decline Kien's invitation to apply New Jersey's "lower standard of degree of similarity of offenses ... [when the] defendant us[es] other-crimes evidence defensively" as opposed to when the State uses such evidence incriminatingly. *See Garland,* 788 N.E.2d at 430 n. 7. Our Supreme Court has not decided "whether to embrace such an approach," *see id.,* and we leave such a decision for that court.

failing to investigate and present it.[9]

Affirmed.

BAILEY, J., and BARNES, J., concur.

9. Even if the identity exception was satisfied, we conclude that probative value of this evidence is substantially outweighed by not only the danger of unfair prejudice, but also by confusion of the issues and undue delay.