**Brian B. ROBERTS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 24A04–1011–PC–726.**

Court of Appeals of Indiana.

Aug. 23, 2011.

Transfer Denied Oct. 19, 2011.

---

560

Stephen T. Owens, Public Defender of Indiana, Cory J. Lightner, Deputy Public Defender, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Brian B. Roberts ("Roberts") pleaded guilty in Franklin Circuit Court to Class B felony burglary and Class D felony theft. He was ordered to serve an aggregate sentence of twenty years with five years suspended. Roberts subsequently filed a petition for postconviction relief arguing that his guilty plea was not knowing, intelligent, and voluntary, and that he received ineffective assistance of counsel. The trial court denied Roberts's petition for post-conviction relief. Roberts appeals and raises two issues, which we restate as:

> I. Whether Roberts's guilty plea was knowing, intelligent, and voluntary due to the State's threat to pursue an invalid habitual offender enhancement; and,

> II. Whether Roberts received ineffective assistance of trial counsel.

Concluding that the post-conviction court properly denied Roberts's petition for post-conviction relief, we affirm.

### Facts and Procedural History

In August 2005, Roberts was charged with burglary and theft for breaking into a residence and stealing a safe, firearms, and two chain saws. Roberts and his accomplice also stole the victim's car. Roberts and his accomplice eventually confessed to the police and the stolen property was recovered from Roberts's car and near his home.[1] The State later filed a motion to amend the charging information to add an allegation that Roberts was an habitual offender.

In December 2006, Roberts's trial counsel informed Roberts that the State had filed the motion to amend the charging information and discussed the penal conse-quences with him. At that time, Roberts informed counsel that one of the alleged prior convictions was not his, specifically a 1996 burglary conviction. It was later determined that the burglary conviction belonged to another individual named Brian G. Roberts. The trial court never ruled on the State's motion to amend the charging information.

On January 4, 2007, a few days prior to the scheduled trial, Roberts agreed to plead guilty to Class B felony burglary and Class D felony theft. A written plea agreement was not presented to the court, but Roberts's counsel and the State agreed that the State would not pursue its motion to amend the charging information to add an habitual offender allegation, in exchange for Roberts's guilty plea. Roberts's trial counsel had not yet investigated Roberts's assertion that the burglary conviction listed in the habitual offender allegation was not his.

Prior to sentencing, Roberts filed a pro se motion to withdraw his guilty plea, which the trial court denied. On January 31, 2007, the trial court sentenced Roberts to an aggregate term of twenty years with five years suspended. The court did not specifically find any aggravating or mitigating circumstances but noted Roberts's criminal history before imposing the sentence.

Roberts filed a direct appeal arguing that the trial court improperly denied his pro se motion to withdraw his guilty plea and that his sentence was inappropriate. Our court rejected these arguments and affirmed Roberts's sentence. *See Roberts v. State*, No. 24A05–0703–CR–190, 2007 WL 4246583 (Ind.Ct.App. December 5, 2007).

---

1. But Roberts claimed that he was living in the victim's home at the time of the offenses, and therefore, he was not guilty of burglary.

While his direct appeal was pending, Roberts filed a pro se petition for postconviction relief. Post-conviction counsel later moved to amend the petition on May 10, 2010. A hearing was held on the petition on September 8, 2010. At the hearing, Roberts testified that he was told that if he did not plead guilty, he would be facing a thirty-year sentence for the habitual offender enhancement. Tr. p. 4. Roberts stated that he told his trial counsel that the 1996 burglary conviction listed in the habitual offender count was not his and that his counsel needed to investigate the matter. Tr. p. 5. Roberts's trial counsel testified that he discussed the possible habitual offender allegation and its consequences with Roberts, and that the State had agreed not to pursue the habitual offender allegation if Roberts agreed to plead guilty. Tr. pp. 12–13. Counsel also testified that he did not specifically recall Roberts informing him that the burglary conviction was not his, but counsel had no reason to doubt Roberts's own testimony that counsel was provided with that information. Tr. p. 14.

On October 12, 2010, the post-conviction court entered findings of fact and conclusions of law. The trial court found in pertinent part:

15. At the evidentiary hearing, Mr. Roberts testified he informed Mr. Butsch that one of the underlying felony convictions used to support the State's proposed habitual offender enhancement was not his but rather was the conviction of a different Brian Roberts. Mr. Roberts also stated that he was not eligible for a habitual offender enhancement at the time of his guilty plea.

16. At the evidentiary hearing, Mr. Butsch testified that Mr. Roberts informed Butsch that one of the convictions used to support the habitual offender enhancement was not Roberts.

17. The burglary conviction alleged in paragraph 1 of the proposed amended information for Count III attached to its Motion to Amend Information is not that of Brian Beecher Roberts.

Appellant's App. p. 59. Thereafter, the post conviction court concluded that because Roberts knew that he was not habitual offender eligible, his guilty plea was not involuntary. Id. at 60. Further, the court stated that "[t]he State's request to file an habitual offender enhancement was not the basis of Defendant's guilty plea, as the Court never allowed the State to proceed with the enhancement." Id. at 61. The court therefore denied Roberts's petition for post-conviction relief. Roberts now appeals.

## Standard of Review

Post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post–Conviction Rules. Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001) (citing Ind. Post–Conviction Rule 1(1)). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. Kien v. State, 866 N.E.2d 377, 381 (Ind.Ct.App. 2007), trans. denied. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. Bahm v. State, 789 N.E.2d 50, 57 (Ind.Ct.App.2003), trans. denied. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction

court. *Ivy v. State*, 861 N.E.2d 1242, 1244 (Ind.Ct.App.2007), *trans. denied.*

## Discussion and Decision

Roberts argues that his guilty plea was not knowing, intelligent, and voluntary due to the State's illusory threat to pursue the habitual offender enhancement. He also claims that his trial counsel was ineffective for failing to investigate the matter, and for advising him that he was facing an additional thirty years of incarceration for the habitual offender enhancement.

### I. Involuntary or Illusory Guilty Plea

■■ A plea bargain motivated by an improper threat is deemed illusory and a denial of substantive rights. *Champion v. State*, 478 N.E.2d 681, 683 (Ind.1985) (citing *Gibson v. State*, 456 N.E.2d 1006, 1009 (Ind.1983)). The State must possess, at the moment a guilty plea is entered, the power to carry out any threat that was a factor in obtaining the plea agreement. *Daniels v. State*, 531 N.E.2d 1173, 1174 (Ind.1988). " '[A] threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary.' " *Munger v. State*, 420 N.E.2d 1380, 1387 (Ind.Ct.App.1981) (quoting *Lassiter v. Turner*, 423 F.2d 897, 900 (4th Cir.1970), *cert. denied* ).

In *Nash v. State*, 429 N.E.2d 666, 672 (Ind.Ct.App.1981), our court concluded that if the improper threat of an habitual offender sentence enhancement "played a significant part in the plea negotiations," then any resulting plea is illusory, even if that threat was not the "main" motivation for the plea. But our supreme court later placed a higher burden upon defendants who are claiming that an improper punitive threat compelled their guilty plea before that plea may be set aside.

In *Segura v. State*, 749 N.E.2d 496 (Ind. 2001), the defendant pled guilty to dealing in cocaine and, in a subsequent post-conviction proceeding, sought to set aside that plea on the basis that his trial attorney had been ineffective for failing to advise him of the possibility of deportation if he pled guilty. With respect to a claim that a defendant has received incorrect advice as to penal consequences of a plea, the court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the post-conviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and post-conviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Id.* at 504–05.

■■ The court went on to hold that a defendant seeking to set aside a guilty plea on the basis of incorrect advice as to penal consequences need not establish his or her actual innocence, or in other words, need not establish that the ultimate result of a full trial and sentencing would have been more favorable than the result of the guilty plea. *Id.* at 507. Rather, the court held:

> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised.... [A] petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that

"there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

... [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Id.* (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Citing *Segura,* our court later held that "when an error in advice supports a claim of intimidation by exaggerated penalty, a petitioner must establish specific facts that lead to the conclusion that a reasonable defendant would not have entered a plea had the error in advice not been committed." *Willoughby v. State,* 792 N.E.2d 560, 564 (Ind.Ct.App.2003), *trans. denied.*

Although *Segura* and *Willoughby* dealt specifically with ineffective assistance of counsel claims, the standard they established is equally applicable to straightforward claims of an involuntary or illusory plea. *Segura* expressly refers to both ineffective assistance and involuntary plea claims. *See Segura,* 749 N.E.2d at 504; *see also Willoughby,* 792 N.E.2d at 563 (stating "it is immaterial whether [a defendant's] claim is of an involuntary plea or ineffective assistance of counsel.").

In this case, Roberts gave the following testimony regarding the invalid habitual offender allegation:

COUNSEL: In what way was the habitual offender enhancement incorrect?

ROBERTS: Well, he used a 1996 Burglary conviction that belonged to another Brian Roberts that wasn't my conviction.

COUNSEL: Did you inform your guilty plea attorney about that during the time of those proceedings?

ROBERTS: I tried to explain to him that he needed to investigate, but it didn't seem to get done.

COUNSEL: Did you ever try to inform the Court that you thought this was in error?

ROBERTS: I think that ... I brought it to [Judge] Cox's attention that I wasn't very happy with Mr. Butsch's representation.

COURT: The question, Brian, was whether you informed the Court that the conviction that you ... that the State was relying on for the habitual wasn't you?

ROBERTS: Yeah, I told everybody that I didn't think I was habitual that would listen.

\*     \*     \*

COUNSEL: And in particular though, you told Mr. Butsch that was not your conviction, You thought there was something wrong with that habitual offender that it was not applicable to you?

ROBERTS: Well, I told him that I didn't have no 1996 Burglary conviction.

COUNSEL: Ok, and at the time in 2005 when all this was going on, you wouldn't have other prior felonies that would fit under the habitual statute that would make you eligible for that, is that correct?

ROBERTS: Not at ... that time I wouldn't.

Tr. pp. 5–6.

■ Roberts knew that the 1996 burglary conviction was not his, and therefore, he

did not believe that he was eligible for the habitual offender enhancement. While Roberts was faced with the threat of an invalid habitual offender enhancement, by his own admission, he was aware of its invalidity. Consequently, the State's threat to pursue the amendment to add the habitual offender count could not have reasonably been Roberts's main motivation for his decision to plead guilty. This is particularly true under the circumstances presented in this case because Roberts pleaded guilty four days before the scheduled trial date, and the trial court had not addressed the State's pending motion to amend the charging information.

Trial counsel certainly should have investigated Roberts's assertion that the 1996 burglary conviction was not his, and perhaps filed an objection to the State's motion to amend the charging information to add the habitual offender count. But counsel's failure to do so was not material to Roberts's decision to plead guilty because Roberts knew that he was not an habitual offender. For these reasons, we conclude that Roberts's plea was entered knowingly, intelligently, and voluntarily.

## II. Ineffective Assistance of Trial Counsel

Claims of ineffective assistance of trial counsel are generally reviewed under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind.2006). That is, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that his counsel's deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694, 104 S.Ct. 2052. A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome." *Id.*

A claim may be disposed of on either prong of the two-part *Strickland* test. *Grinstead*, 845 N.E.2d at 1031. An inability to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance claim. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind.1999). Generally, we need not evaluate counsel's performance if the defendant has suffered no prejudice. And most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

■ Roberts's trial counsel engaged in deficient performance by failing to investigate Roberts's statement that the 1996 burglary conviction was not his. Counsel was also arguably deficient by allowing Roberts to plead guilty without a written plea agreement. But Roberts cannot establish prejudice due to trial counsel's deficient performance. Roberts knew that he was not an habitual offender, and therefore, the State's threat to amend the charging information to include an habitual offender allegation was not Roberts's motivation for pleading guilty. We therefore conclude that Roberts's trial counsel was not ineffective.

## Conclusion

Because Roberts's guilty plea was knowing, intelligent, and voluntary, and he was not subjected to ineffective assistance of counsel, we affirm the post-conviction court's denial of his petition for post-conviction relief.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.