Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 19 2014, 6:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANDREW WHITMER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1306-CR-318 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1209-FA-24

**March 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Andrew Whitmer appeals his convictions of three counts of child molesting, two as Class A felonies and one as a Class C felony, and one count of attempted child molesting, a Class A felony. We affirm.

On the afternoon of September 6, 2012, Officer Brad Rohrscheib of the South Bend Police Department was on patrol when he was stopped by a woman who was standing near several children, including seven-year-old Y.A. After talking with the woman, Rohrscheib called his sergeant and asked that she come to the scene. While he was waiting, Y.A. approached him. Rohrscheib and Y.A. talked until his sergeant arrived, and then Rohrscheib asked Y.A. to get in his car. Y.A. directed him to her house. Upon arrival, Rohrscheib located Whitmer, who is Y.A.'s uncle. Based upon his conversation with Y.A., Rohrscheib placed Whitmer in custody.

Next, Rohrscheib drove Y.A. and her mother to the Casie Center, which is a child advocacy center where allegations of abuse are investigated. Detective David Sult was dispatched to the center. Using a closed-circuit video system, Sult watched Carolyn Hahn, a child forensic interviewer, question Y.A. Y.A. wrote on pre-printed diagrams and made drawings during her talk with Hahn. One of the drawings is of a man with an erect penis holding himself up by his arms on top of a smaller person. Y.A. later testified the man represented Whitmer, and the smaller person was her.

Meanwhile, another officer brought Whitmer to the Casie Center. After Sult watched Hahn interview Y.A., he interrogated Whitmer. Whitmer told him Y.A. slept in the living room on the floor with her brother, and Whitmer's mother slept in a chair in the same room. Whitmer initially denied touching Y.A. in a sexual way. He then said that

2

one night, while looking for the dogs, he went into the living room and touched Y.A.'s thigh while her grandmother and brother were sleeping. Upon further questioning, Whitmer said he touched Y.A.'s vagina over her clothes, and then he changed his story again to say he touched Y.A.'s vagina under her clothes. Later, Whitmer told Sult that he also lay on top of Y.A. as she lay on her stomach and put his penis between her legs. He admitted that he had "sex" with Y.A. "once." Tr. p. 168.

The State charged Whitmer with three counts of child molesting, two as Class A felonies and one as a Class C felony. The State later amended the charging information to add two counts of Class A felony attempted child molesting. At trial, the court determined that Y.A. was competent to testify. Y.A. testified that Whitmer went into the living room at night when her grandmother and brother were sleeping. Y.A. further stated that Whitmer pulled down her pajamas and penetrated her vagina and anus with his penis on multiple occasions. She also said he rubbed her vagina with his hand on more than one occasion.

The jury found Whitmer guilty as charged. The trial court entered a judgment of conviction on all charges except one count of attempted child molesting, citing double jeopardy concerns, and sentenced him accordingly. This appeal followed.

Whitmer claims the trial court erred in determining that Y.A. was competent to testify. When a child is called to testify at trial, the court has the discretion to determine if a child witness is competent. Richard v. State, 820 N.E.2d 749, 754 (Ind. Ct. App. 2005), trans. denied. As a general rule, the trial court's decision on a child's competency to testify is reviewable only for a manifest abuse of that discretion. Aldridge v. State,

3

779 N.E.2d 607, 609 (Ind. Ct. App. 2002), trans. denied. However, in this case, Whitmer concedes that he failed to object to the trial court's determination that Y.A. was competent. Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission is fundamental error. Archer v. State, 996 N.E.2d 341, 346 (Ind. Ct. App. 2013), trans. denied.

The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010) (quoting Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006)). The claimed error must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." Id. (quoting Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009)).

To determine whether a child is competent to testify, the trial court must consider whether the child: (1) understands the difference between telling a lie and telling the truth; (2) knows he or she is under a compulsion to tell the truth; and (3) knows what a true statement actually is. Archer, 996 N.E.2d at 346.

In this case, the trial court inquired into Y.A.'s competency during several hearings held outside the presence of the jury, a process that the State recognizes involved "considerable struggle." Appellee's Br. p. 6. The court's first examination occurred when the State called Y.A. to testify on the morning of the first day of trial. She refused to answer the prosecutor's questions or look at her.

4

After a lunch break, Y.A. answered the prosecutor's questions. She said she knew the difference between the truth and a lie and that she was obligated to tell the truth. Tr. pp. 62-65. However, when the trial court and Whitmer's counsel questioned her, Y.A. said she would not tell the truth. When the prosecutor asked her why she had been crying, she pointed at Whitmer. Y.A. then further told the prosecutor she would not tell the truth and did not want to answer. At that point, the trial court allowed Y.A.'s mother into the courtroom, but Y.A. stopped answering questions. She agreed with the prosecutor that seeing Whitmer bothered her. The prosecutor then stopped questioning Y.A. and, with the court's permission, presented other evidence instead.

On the second day of the trial, the court resumed its competency hearing. Y.A. agreed that she had to tell the truth and, upon questioning by Whitmer's counsel, promised to do so. She further told Whitmer's counsel that she understood the difference between telling a truth and a lie. At that point, the court found that Y.A. was competent to testify.

We cannot conclude that the court's determination that Y.A. was competent to testify amounted to a clearly blatant violation of principles of due process or rendered a fair trial impossible. The court referred to the three elements set forth in Archer, demonstrating that it was aware of the applicable legal standard. The parties and the court's questioning established the three elements of competency. Furthermore, it appears from our review of the record that Y.A.'s prior refusals to answer questions and her refusals to promise to tell the truth were caused by her understandable fear of confronting the adult she was accusing. We do not discern from the record that Y.A. was

unable to understand the difference between a truth and a lie, was unable to understand that she was required to tell the truth, or intended to deceive the jury. Furthermore, we note that there was other evidence against Whitmer, including his own incriminating statements to Sult. Whitmer has thus failed to establish fundamental error.

Whitmer notes that the State used leading questions during Y.A.'s testimony. He further notes that Y.A.'s testimony was for the most part nonverbal, consisting of her pointing to the words "Yes" or "No" written on an easel in response to questions. These circumstances go to Y.A.'s credibility rather than her competency. It was for the jury to decide what weight to give the manner in which she responded to questions. See Kien v. State, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007) (any inconsistencies in child witness's testimony went to her credibility, not her competency, and court did not err by permitting such testimony), trans. denied.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and CRONE, J., concur.