

FILED

Mar 28 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

William D. Polansky
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vorice Williams-Bey,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 28, 2016

Court of Appeals Case No.
20A03-1508-PC-1173

Appeal from the Elkhart County
Superior Court 1

The Honorable Evan S. Roberts,
Judge

Trial Court Cause No.
20D01-1401-PC-1

**Bailey, Judge.**

# Case Summary

Vorice Williams-Bey ("Williams") pled guilty to Escape, as a Class B felony,[1] and was sentenced to fifteen years imprisonment, with five years suspended to probation. He subsequently sought post-conviction relief, which was denied. Williams now appeals.

We reverse and remand for further proceedings.[2]

# Issue

Williams presents several issues for our review, one of which we find dispositive: whether the post-conviction court erred when it concluded that Williams did not protest his innocence as to infliction of injury during the guilty plea hearing.

# Facts and Procedural History

On May 5, 2011, Williams was placed under arrest and was taken to an Elkhart hospital to be checked for injuries. While being escorted to a police squad car, Williams fled on foot from police and re-entered the hospital. A police

---

[1] *See* Ind. Code § 35-44-1.3-4. Williams was charged under I.C. § 35-44-3-5, which was recodified in 2012 at I.C. § 35-44-1.3-4. We refer throughout to the statutory provisions applicable at the time of his offense.

[2] This Court heard oral argument on this case on February 26, 2016, at Brown County High School in Nashville. We extend our thanks to the school for its hospitality, and to the parties' counsel for their able advocacy.

detective, Crystal Garcia ("Detective Garcia"), located Williams in a hospital stairwell and attempted to apprehend him by grabbing Williams's jacket from behind. Detective Garcia managed to grab hold of the jacket, and her hand was injured in the process. Williams, however, got away from Detective Garcia and was eventually caught by other officers.

[5] Williams was charged with Escape, elevated to a Class B felony because of Detective Garcia's injury, and a number of other offenses. After charges were filed, Williams was represented by an attorney from the public defender's office. Williams became dissatisfied with the attorney's representation, however, and on October 29, 2012 he submitted a handwritten "Notice of Entry of Appearance," requesting permission to represent himself. This notice was sent by the court to both the prosecutor and Williams's defense attorney, but no hearing was held on Williams's request.

[6] On January 28, 2013, Williams, still represented by a public defender, entered into a plea agreement under which he pled guilty to Escape, as a Class B felony. Also pursuant to the plea agreement, the State dismissed charges of Battery and Resisting Law Enforcement, as Class A misdemeanors, as well as charges in another case. At the guilty plea hearing, Williams admitted fleeing from police custody and admitted that Detective Garcia was injured when she grabbed his coat, but repeatedly denied having intended Detective Garcia's injury or of knowing of her injury until after he was apprehended. However, Williams acknowledged that he understood himself to be pleading guilty, and the trial court accepted his guilty plea. On February 28, 2013, Williams was sentenced

to a prison term of ten years, and a number of charges against him were dismissed.

[7] On January 17, 2014, Williams filed a petition for post-conviction relief, requesting representation from the office of the Indiana State Public Defender, which accepted Williams's request. Represented by the State Public Defender, Williams sought to have his conviction for Escape vacated on three bases. First, Williams challenged the voluntariness of his guilty plea, arguing that though he admitted to having fled from police custody, his statements concerning the cause of Detective Garcia's injury amounted to a protestation of innocence precluding acceptance of his guilty plea. Second, Williams contended that the trial court did not follow proper procedures when it failed to conduct a hearing on his request to represent himself at trial, a hearing required by U.S. Supreme Court precedent, and thus his conviction was invalid. Third, Williams argued that the trial court's failure to conduct a hearing and grant his request to represent himself deprived him of his constitutional right to effective assistance of counsel.

[8] On April 24, 2015, the post-conviction court conducted a hearing on Williams's petition, during which Williams and his public defender from the trial court testified. On July 24, 2015, the post-conviction court denied Williams's petition for post-conviction relief.

[9]    This appeal followed.[3]

# Discussion and Decision

## Standard of Review

[10]    Our standard of review upon an appeal from a post-conviction proceeding is well settled:

> Post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001) (citing Ind. Post-Conviction Rule 1(1)). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *Kien v. State,* 866 N.E.2d 377, 381 (Ind. Ct. App. 2007), *trans. denied.* The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *Bahm v. State,* 789 N.E.2d 50, 57 (Ind. Ct. App. 2003), *trans. denied.* If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court. *Ivy v. State,* 861 N.E.2d 1242, 1244 (Ind. Ct. App. 2007), *trans. denied.*

---

[3] Additional facts will be provided below as required.

*Roberts v. State*, 953 N.E.2d 559, 562-63 (Ind. Ct. App. 2011), *trans. denied*.

# Plea Agreement

[11] Williams contends that the post-conviction court erred when it found that he entered into the plea agreement voluntarily even though he protested his innocence of an element of the enhanced offense of Escape, as a Class B felony, at the change-of-plea hearing.

[12] Where, as here, a petitioner seeks post-conviction relief on the ground that a plea was entered on bad legal advice or involuntarily, it is immaterial whether the petitioner bases his claim on ineffectiveness of counsel or involuntariness of the plea. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*. In either case, a petitioner must establish that his decision to enter a plea was influenced by counsel's error. *Id.* (citing *Segura v. State*, 749 N.E.2d 496, 504 (Ind. 2001)). "'However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.'" *Id.*

[13] As this Court has observed, "there is a legal distinction between a claim that a guilty plea was entered without an adequate factual basis and a claim that it was entered by one who was, at the same time, protesting his innocence." *Wingham v. State*, 780 N.E.2d 1164, 1164 (Ind. Ct. App. 2002). The Indiana Supreme Court held in *Harshman v. State*,

a plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction. No plea of guilty should be accepted when it appears to be doubtful whether it is being intelligently and understandingly made, or when it appears that, for any reason, the plea is wholly inconsistent with the realities of the situation.

232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953). "A judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." *Ross v. State*, 456 N.E.2d 420, 423 (Ind. 1983).

[14] Williams does not assert that he entered a strategic plea wherein he clearly pled guilty while maintaining his innocence in all respects. Rather, Williams contends that he pled guilty not to Escape, as a Class B felony, but only to the unenhanced offense of Escape, as a Class C felony, and that he protested his innocence as to the element that enhanced the offense to a Class B felony. The crime of Escape, as a Class B felony, was defined at the time of Williams's offense as follows: "A person…who intentionally flees from lawful detention commits escape, a Class C felony. However, the offense is a Class B felony if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person." I.C. § 35-44.1-3-4(a) (West 2012).

[15] Williams admits that he intentionally fled from a lawful detention. (Ex. 1 at 22.) However, in arguing that he maintained his innocence of the Class B felony for which he pled guilty and was convicted, Williams draws our

attention specifically to the following exchanges in the transcript of the guilty plea hearing:

> [COUNSEL]: Right. And during the course of your attempting to break away from [Detective Garcia], she got her hand caught up in your coat. Is that correct, sir?
>
> [WILLIAMS]: Yes, she did.
>
> [COUNSEL]: Well, that's what I mean. She got her hand –
>
> [WILLIAMS]: Just making it clear.
>
> [COUNSEL]: Okay. She got her had caught up in your coat while she was attempting to apprehend you. Is that correct?
>
> [WILLIAMS]: Yes. Yes.
>
> [COUNSEL]: Yes. During the course of that period of time did she suffer—you later learned that she suffered some pain to her hand as a result of her getting her hand caught up in your coat. Is that correct, sir?

(Ex. 1 at 23-24.) After this examination by trial counsel, the State inquired:

> [STATE]: Okay. Inflicting bodily injury on [Detective Garcia]. Is that correct?
>
> [WILLIAMS]: That she had got harmed in the process of this happening, yes.

(Ex. 1 at 25.)

Williams contends that this was sufficient to constitute a denial that he had inflicted injury on Detective Garcia. The post-conviction court found otherwise, referring in particular to *Bates v. State*, 517 N.E.2d 379 (Ind. Ct. App. 1988), as supporting a conclusion that "failure to admit a particular element of the crime to which one pleads guilty, by making an ambivalent statement during the factual basis colloquy, does not constitute a protestation of innocence." (App'x at 101.)

Whether Williams's statements amount to any kind of denial rests in part upon the interpretation of the Escape statute under which he pled guilty and was convicted. As he notes in his brief, Williams did not admit to conducting himself in a manner that caused Detective Garcia's injury; rather, he testified that after Detective Garcia grabbed him from behind, her hand was bound up in his coat and that this was the cause of the injury. Williams contends that this is insufficient as a factual basis to satisfy the requirements for elevating the offense of Escape to a Class B felony, because the elevation of the offense requires proof that "while committing it, the person … inflicts bodily injury on another person."

Williams's position as to the meaning of the Escape statute's bodily injury requirement finds support in the language of the statute when compared with other similar statutory provisions. For example, elevation of the offense of Resisting Law Enforcement from a Class A misdemeanor to a Level 6 felony applies where an individual "inflicts bodily injury on or otherwise causes bodily injury to another person." I.C. § 35-44.1-3-1(b)(1)(B). This Court has

interpreted the "inflicts or otherwise causes bodily injury" provision to require that the defendant not be a passive participant in a situation that leads to a police officer's injury. Thus, in *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014), we reversed a Class D felony conviction where the defendant resisted by refusing to cooperate with a police officer who then attempted various means by which to force the defendant to the ground. Smith remained stationary and eventually the officer threw Smith to the ground, scraping his knuckles on the ground as he tried to remove Smith's arms from under her body. In reversing Smith's conviction, the *Smith* court observed that "Smith did not create a scenario in which Officer Jones's only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id.* at 126. Noting that Smith was a "passive part of the encounter" and "took no actions toward" the officer, the *Smith* Court held that Smith's actions fell outside both the "inflicts" and "causes" provisions of the statute. *Id.* at 125.

[19]  In reaching that conclusion, the *Smith* Court held as distinguishable a prior decision, *Whaley v. State*, 843 N.E.2d 1 (Ind. Ct. App. 2006). In *Whaley*, the defendant was charged under a prior version of the Resisting Law Enforcement statute that did not include the "or otherwise causes" language reviewed in *Smith*, so that the language of the enhanced offense matches that of the Escape statute at issue in this case. Whaley, who had been fleeing police on foot after abandoning a vehicle after a car chase, fell down and put his hands underneath his body to prevent pursuing deputies from handcuffing him. *Id.* at 5. To bring Whaley's arms behind his back, the deputies "had to hit Whaley's forearms,"

resulting in injury to one deputy's right hand and to another deputy's wrist and right hand. *Id.*

[20] Most recently, a panel of this Court again addressed the language of the Resisting Law Enforcement statute in *Moore v. State*, No. 49A02-1505-CR-321, slip op. (Ind. Ct. App. Jan. 29, 2016). In *Moore*, the defendant fled from police on foot. During the foot chase, one of the pursuing officers fell and was injured, but none of the injury came as a result of physical contact with Moore. A majority of the *Moore* panel reversed Moore's conviction for Resisting Law Enforcement as a Level 6 felony, holding that there was no evidence that Moore proximately caused the officer's injury. Judge Bradford, however, dissented, concluding that Moore's flight made foreseeable the possibility that a pursuing officer might fall and be injured, and that but for Moore's conduct no injury would have occurred. *Moore*, No. 49A02-1505-CR-321, slip op. at 27-28.

[21] At oral argument, Williams directed this Court to a discussion during the sentencing hearing between his trial counsel and the trial court concerning whether Escape, as a Class B felony, requires proof that a defendant acted with intent to injure another person. During oral argument, Williams suggested that the trial court had opined that proof of intent was unnecessary because the injury element is a strict liability requirement, and this misapprehension contributed to the involuntariness of the plea.

[22] Our review of the exchange between Williams's trial counsel and the court reveals that trial counsel stated, in argument concerning Williams's sentence:

When he was apprehended by Detective Garcia, he didn't even see her right away and the injury occurred as he was trying to break through as someone was grabbing on to him at that point. *It was not an intentional act on Mr. Williams's part, although pursuant to the statute, it is something that happened in connection with it.* So I want the Court to realize, once again, this was not necessarily a physical confrontation that Mr. Williams was trying to create and extenuate or make worse.

(Tr. at 64; emphasis added.) Following upon this, the trial court stated:

Now whether or not Mr. Williams intentionally or knowingly hurt the police officer is irrelevant in the context of a police officer was hurt. Mr. Williams put himself into that position by running.

(Tr. at 69.)

[23] Trial counsel thus appears, in advising Williams's entry of a guilty plea, to have relied upon an interpretation of the "inflicts" language in the Escape statute that construed the statute as not requiring scienter to support a conviction for the Class B-level enhanced offense. The trial court agreed with this interpretation.

[24] The matter of the interpretation of the "inflicts" element of the Escape statute was unsettled at the time, and indeed remains unsettled at this time. The post-conviction court recognized this in its order on Williams's post-conviction petition, but concluded that the question was irrelevant. The court instead found that, whatever the proper interpretation of the statute, Williams's statements during the change-of-plea hearing were intended "to clarify his legal

position as to the meaning of 'inflicts,' not protest his innocence." (App'x at 101.)

[25] Yet if the purpose of the statements was to clarify a legal position, that legal position made it clear that Williams did not agree that he had committed the elevated offense. Williams's repeatedly denied having inflicted injury on Detective Garcia through his repeated and careful insistence that Detective Garcia had been harmed, using passive-voice language that disclaimed any effort on his part to cause harm. These statements amounted to a denial of culpability for the Class B-level enhancement with which Williams was charged.

[26] Accordingly, we conclude that the post-conviction court clearly erred when it found that Williams's statements denying culpability for the enhanced offense with which he was charged failed to amount to a protestation of his innocence. We accordingly reverse the post-conviction court's order denying Williams's petition for relief.

## Remedy

[27] The question remains as to the precise nature of Williams's remedy in this case. Williams suggested during proceedings before the post-conviction court that an appropriate remedy would be vacation of the Class B conviction and entry of a judgment of conviction and sentence for Escape, as a Class C felony.

[28] Here, Williams's petition for post-conviction relief sought to set aside a guilty plea associated with a plea agreement under which charges against him were

dismissed both in the criminal case underlying this appeal and in an unrelated case. Because vacating Williams's plea reaches the core of the bargain between him and the State, we cannot agree that the appropriate remedy here is simply to order the post-conviction court to vacate the Class B felony conviction and replace it with a Class C, unenhanced conviction for Escape. Rather, the appropriate remedy here—and our instruction upon remand to the post-conviction court—is to order that the plea agreement be vacated in its entirety. To be clear, this may result in the State reinstating all the dismissed charges against Williams; that is a necessary consequence of vacating the plea agreement. Should Williams again be convicted—whether by virtue of a trial or a guilty plea—sentencing will still be subject to the limits imposed by Post-Conviction Rule 1(10).

# Conclusion

[29] The post-conviction court erred when it found that Williams did not protest his innocence of Escape, as a Class B felony. We accordingly reverse the judgment of the post-conviction court and remand for further proceedings consistent with our decision today.

[30] Reversed and remanded with instructions.

Baker, J., and Najam, J., concur.