Everett M. ROBINSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9907–CR–331.

Court of Appeals of Indiana.

June 8, 2000.

Transfer Denied Sept. 5, 2000.

Jodi Kathryn Stein, Marion County Public Defender Agency, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney

General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Everett M. Robinson ("Robinson") appeals from his convictions for two counts of attempted murder,[1] a Class A felony; possession of a handgun with an obliterated serial number,[2] a Class C felony; possession of cocaine[3] as a Class D felony; and criminal gang activity,[4] a Class D felony. We affirm in part and reverse in part.

### Issues

Robinson raises six issues for review, which we restate as follows:

I. whether the trial court erred in denying his motions to suppress evidence seized from his apartment;

II. whether the trial court erred in admitting statements of his co-defendant, Lamont Wright ("Wright");

III. whether his convictions for attempted murder are supported by sufficient evidence;

IV. whether his conviction for criminal gang activity is supported by sufficient evidence;

V. whether the trial court erred in denying his motion to sever the criminal gang activity charge;

VI. whether the trial court erred in instructing the jury on the elements of criminal gang activity; and

VII. whether the trial court erred in admitting certain evidence under the motive exception to Indiana Evidence Rule 404(b).

### Facts and Procedural History

The facts most favorable to the convictions indicate that on February 28, 1997,[5] undercover officers from the Indianapolis Police Department purchased crack cocaine from Donyall Stewart ("Stewart") in the 3900 block of North Grand Avenue in a "buy-bust" operation. After the officers drove away from the buy and identified Stewart via radio, several undercover officers wearing vests emblazoned with "POLICE" arrived in two unmarked cars to make the bust and pursued the fleeing Stewart on foot. During the pursuit, Stewart discarded a quantity of cocaine. Officer Raymond Koons ("Koons") broke off the chase and stood over the contraband to prevent its unauthorized removal from the scene.

Lamont Wright ("Wright") saw the officers chase Stewart and went to Robinson's apartment at 3903 North Grand Avenue to apprise him of the situation. Wright told Robinson to "grab the heat" and that the "narcos got" Stewart. Robinson responded that he was "tired of bein' messed with," and both men equipped themselves with firearms from Robinson's apartment. Wright and Robinson went out to the porch and fired repeatedly at Koons and Officer Jeffrey Goodin ("Goodin"), who was driving the second unmarked car. Goodin stopped the car in a parking lot across the street from Robinson's apartment, and the two officers took cover behind the car as bullets struck the pavement within a yard of them. Both officers heard two distinctive gunshot reports, with the louder shots sounding as if they originated from a shotgun or rifle and the remainder from a handgun.

1. See IND.CODE §§ 35–42–1–1 (murder) and 35–41–5–1 (definition of attempt).

2. See IND.CODE § 35–47–2–18.

3. See IND.CODE § 35–48–4–6(a).

4. See IND.CODE § 35–45–9–3.

5. Both parties state that the "buy-bust" operation occurred on February 29; however, all charging information and trial testimony puts the date at February 28.

Police established a protective perimeter and surrounded Robinson's apartment building after the gunfire ceased. Officers ordered all occupants out of the building, but they received no response from Robinson's apartment. A neighbor, Shantel Burrell ("Burrell"), gave Robinson's telephone number to the police. An officer telephoned Robinson and asked him to exit his apartment walking backward with his hands over his head. Robinson complied. Officer Steven Staal ("Staal") approached Robinson, explained the reason for the police presence, and asked to search his apartment; Robinson consented. Staal and other officers searched Robinson's apartment and found ammunition in the bedroom.

When Officer Andrew Gillespie ("Gillespie") entered the apartment, Robinson was sitting handcuffed on the couch. An officer informed Gillespie that the apartment's attic access was open, and Gillespie asked Robinson if he could search the attic; Robinson consented. Before entering the attic, Gillespie sprayed a burst of chemical repellent into the access opening to flush out any potential ambushers. When he heard no movement, Gillespie peered into the attic and saw four firearms and a cooler less than a foot from the access opening. An evidence technician later removed these items and ammunition from the attic and opened the cooler, revealing a small quantity of crack cocaine.

When Koons heard about the weapons, he entered Robinson's apartment and read him his *Miranda* rights before questioning him about the firearms. Robinson said he knew nothing about them and that he had not fired a gun within the last few hours. Koons responded that the police would conduct a gunshot primer residue test, to which Robinson responded, "[G]o ahead, I'm clean."[6] Evidence technicians subsequently determined that Robinson's right palm tested positive for gunshot primer residue and detected his fingerprint on a handgun with an obliterated serial number that police seized from the attic. Inside the apartment, police also found a letter containing gang symbols allegedly written by Robinson and several photographs of him dressed in attire of the Vice Lords criminal gang.[7] Outside the apartment, police found spent shell casings that matched two of the guns seized from Robinson's attic.

On June 10, 1997, the State charged Stewart, Wright, and Robinson with numerous offenses arising from the February incident. On October 16, 1997, Robinson filed a motion for severance of the criminal gang activity count, which the trial court denied. On April 27, 1998, Robinson filed a motion in limine to exclude certain evidence, which the trial court granted in part and denied in part. That same day, the State filed a motion pursuant to Indiana Evidence Rule 404(b) to allow Burrell to testify about Robinson's alleged gang membership.

Wright and Robinson's first jury trial ended in mistrial on April 30, 1998. On November 25, 1998, Robinson filed a motion to suppress evidence that had been obtained during the search of his apartment. The trial court denied this motion, finding that Robinson had consented to the search and that his consent had not been coerced. On November 30, 1998, the State filed an amended information to reflect only the charges pending against Wright and Robinson. The State also filed a motion for the court to reconsider its ruling excluding Burrell's testimony that she had seen someone cooking cocaine in Robin-

---

**6.** The State's assertion that Robinson told police they could "go ahead" and *search his apartment* because he was "clean" is a misleading summary of Koons's testimony. *See* appellee's brief at 4, 11. We strongly disapprove of such obfuscations, whether intentional or inadvertent, and remind counsel of their duty of candor toward the tribunal. *See* Ind. Professional Conduct Rule 3.3.

**7.** The record indicates that police discovered the letter in a kitchen drawer and the photographs in an open cigar box in Robinson's bedroom.

son's kitchen on the morning of the incident in question. Upon reconsideration, the trial court ruled this evidence admissible.

On November 30, 1998, a second jury tried Robinson and Wright.[8] Before trial, Robinson orally renewed his motion to suppress evidence seized during the search of his house, which the trial court denied. On December 4, 1998, the jury found Robinson not guilty on two counts of conspiracy to commit murder, but found him guilty of possession of a handgun with an obliterated serial number, possession of cocaine, and criminal gang activity. The jury was unable to reach a verdict on two counts of attempted murder. On January 29, 1999, the trial court sentenced Robinson to six years on the handgun conviction and three years on the cocaine conviction, with these sentences to be served concurrently, and imposed a consecutive three-year sentence for the criminal gang conviction.

Prior to his third trial, Robinson filed a motion in limine to exclude evidence relating to the previously adjudicated charges; the trial court granted the motion with respect to the handgun's obliterated serial number, Robinson's tattoos, and photos of Robinson in gang attire, but denied it with respect to the contents of the cooler, the cocaine, the handgun, and references to cocaine being cooked in his apartment. Robinson again renewed his motion to suppress the evidence seized during the search of his apartment, which the trial court denied. After a four-day jury trial, Robinson was found guilty on both counts of attempted murder on February 11, 1999. On February 19, 1999, the trial court sentenced Robinson to thirty years with five years suspended on each count, to be served concurrently to those sentences already imposed. Robinson now appeals; additional facts will be supplied as necessary.

## Discussion and Decision

### I. Denial of Motions to Suppress

Robinson first argues that the trial court erred in denying his successive motions to suppress evidence obtained during the warrantless search of his apartment. Among other reasons, he contends that his consent to the search was invalid because it was involuntarily given as a "submission to the supremacy of the law." Thus, Robinson asserts that the State violated his right to be secure against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[9]

When reviewing a trial court's ruling on the validity of a search and seizure, "we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling." *Melton v. State*, 705 N.E.2d 564, 566 (Ind.Ct.App.1999).

If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the ruling is supported by substantial evidence of

---

**8.** On February 10, 1999, Wright pleaded guilty to lesser-included offenses.

**9.** The State's assertion that Robinson has waived review of his state constitutional claim on this issue by failing to analyze the language of the relevant provision or to provide a separate legal analysis thereof is well taken. *See Dye v. State*, 717 N.E.2d 5, 10 n. 2 (Ind. 1999) (finding defendant had waived due process argument by failing to cite relevant state constitutional provision or offer separate analysis thereof). Thus, we shall confine our review of this issue to Robinson's Fourth Amendment claim under the federal constitu-

tion, which is applicable to the states through the Fourteenth Amendment. *See Sweeney v. State*, 704 N.E.2d 86, 106–07 (Ind.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

probative value. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Id.* (citations omitted). We may affirm a trial court's ruling on a motion to suppress if it is sustainable on any legal grounds apparent in the record. *See Alford v. State,* 699 N.E.2d 247, 250 (Ind.1998).

Notwithstanding Robinson's arguments regarding the voluntariness of his consent to the search, we conclude that the police were justified in conducting a warrantless search of his apartment because of the presence of both probable cause and exigent circumstances. *See Sweeney v. State,* 704 N.E.2d 86, 107 (Ind.1998) (recognizing existence of exigent circumstances as exception to warrant requirement), *cert. denied,* —— U.S. ——, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999); *see also Robles v. State,* 510 N.E.2d 660, 664 (Ind.1987) (existence of probable cause alone does not relieve police from warrant requirement; exigent circumstances must also exist), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2872, 101 L.Ed.2d 907 (1988). "[T]he validity of a warrantless search and seizure turns upon the facts and circumstances of each case. When the defendant challenges a warrantless search, the State has the burden of showing that the search fell within one of the exceptions to the warrant requirements." *Robles,* 510 N.E.2d at 664 (citations omitted).

"Probable cause exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Id.* Here, Koons and Goodin were fired upon by what they believed to be two different weapons from the immediate vicinity of Robinson's apartment building. Given that the police perimeter prevented anyone from entering or leaving the area after the gunfire ceased, the police clearly had probable cause to search Robinson's apartment for the individuals who had shot at Koons and Goodin, as well as for the weapons involved in the shooting. We also find the existence of exigent circumstances in this case, given the unknown whereabouts of armed individuals who had just shot at police officers and the resulting risk of bodily harm or death to both police and civilians. *See Sloane v. State,* 686 N.E.2d 1287, 1293 (Ind.Ct.App. 1997) (exigent circumstances justifying warrantless search include 'risk of bodily harm or death') (citation omitted), *trans. denied.*

Turning to the evidence found in Robinson's apartment, we conclude that the guns and ammunition were seizable without a warrant under the plain view doctrine. Such a seizure is justified if the following conditions are met: "(1) police have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence is immediately apparent; and (3) police have a lawful right of access to the object itself." *Houser v. State,* 678 N.E.2d 95, 101 (Ind.1997) (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). We have already determined that the police had a legal right to be in Robinson's apartment to search for the gunmen and their weapons; thus, we need only determine whether the incriminating character of the evidence was immediately apparent. Under the circumstances, the guns and ammunition are so obviously incriminating as to merit no further discussion.

With respect to the crack cocaine seized during the search of the cooler, Robinson has waived any error in its admission by failing to make a proper objection at the trial in which he was convicted of possession:

To preserve a suppression claim a defendant must make a contemporaneous objection that is sufficiently specific to

alert the trial judge fully of the legal issue. When a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on *other* grounds, the defendant waives the suppression claim.[10]

*Moore v. State,* 669 N.E.2d 733, 742 (Ind. 1996) (citations omitted); *see also* Ind. Evidence Rule 103(a) ("[e]rror may not be predicated" upon admission of evidence unless substantial right of party is affected and "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"); *Sturma v. State,* 683 N.E.2d 606, 608 (Ind. Ct.App.1997) (citing Evid. R. 103(a) and noting application of timely and specific objection rule to constitutional errors). At trial, Robinson objected to the introduction of the cocaine solely on chain-of-custody grounds, rather than relying on the Fourth Amendment arguments raised in his motion to suppress. *See Moore,* 669 N.E.2d at 742 (defendant waived error by objecting to admission of evidence at trial on chain-of-custody grounds rather than on grounds raised in pretrial motion to suppress); *see also Malone v. State,* 700 N.E.2d 780, 784 (Ind.1998) ("A party may not object at one ground at trial and seek reversal on appeal using a different ground.").[11] Consequently, we find no reversible error in the trial court's admission of the cocaine.

## II. Admission of Wright's Statements

▇ At trial, Robinson objected on the basis of hearsay to testimony that Wright had told him to "get" or "grab the heat" and that the "narcos got" or "jump out snatched" Stewart after observing the undercover bust. The trial court admitted the statements under Indiana Evidence Rule 801(d)(2)(E), which provides that "a statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Robinson claims that the trial court erred by admitting the statements against Robinson in the absence of any conspiracy. *See Simpson v. State,* 628 N.E.2d 1215, 1220 (Ind.Ct.App.1994) (alleged conspirator's involvement in conspiracy cannot be proven solely by declarations of co-conspirator; State must lay evidentiary foundation showing existence of conspiracy before "acts or declarations of one conspirator can be admitted into evidence against the other"), *trans. denied.* "The State's proof of the existence of a conspiracy may be by direct or circumstantial evidence and need not be strong; the sufficiency of the State's showing is left to the discretion of the trial court." *Id.* (citations omitted).

▇ We will only reverse a trial court's hearsay ruling for abuse of discretion, and we will affirm the ruling on any legal basis apparent in the record. *See Ross v. State,* 676 N.E.2d 339, 345 (Ind. 1996). Under the facts of the instant case, we need not address Robinson's conspiracy arguments because we conclude that Wright's statements were admissible under the excited utterance exception to the hearsay rule. Indiana Evidence Rule 803(2) defines an "excited utterance" as

10. At this point, we note that Robinson's objections to the admission of the firearms and ammunition at his second and third trials ranged from nonexistent to perfunctory, referring in many instances to a continuing objection made before each trial following the denial of his motion to suppress. It is well settled that "[t]he record must demonstrate that the continuing objection or reference to a prior objection fully and clearly advises the trial court of the specific grounds for the objection." *Smith v. State,* 565 N.E.2d 1059, 1061 (Ind.1991) (citing Ind. Trial Rule 46), *overruled on other grounds by Albaugh v. State,*

721 N.E.2d 1233, 1235 & n. 5 (Ind.1999). Rather than determining the sufficiency of each objection, however, we have chosen to address the admissibility of the firearms and ammunition on the merits for purposes of judicial economy.

11. Because we conclude that the State failed to present *sufficient evidence to support* Robinson's conviction for criminal gang activity, we need not address the validity of the seizure of the photographs and letter during the search of his apartment.

"[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

For a hearsay statement to be admitted as an excited utterance, three elements must be shown: 1) a startling event occurs; 2) a statement is made by a declarant while under the stress of excitement caused by the event; and 3) the statement relates to the event. Application of these criteria is not mechanical. Rather, ... the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. The statement must be trustworthy under the facts of the particular case. The trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event.

*Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind.1996) (citations omitted).

■ Here, undercover officers emerged from their cars to arrest Stewart, who fled from them on foot—undoubtedly a startling event. At the time of the bust, Wright was standing in the parking lot outside Robinson's apartment building:

For the excited utterance exception to apply, the declarant must have personally witnessed the event about which he speaks. However, there does not have to be direct evidence of the personal observation. Instead, the personal observation can be proven by circumstantial evidence. So long as it can be inferred that the declarant personally observed the event, and there is nothing to make the inference that he did not observe the event more probable, it is sufficient.

*Carter v. State,* 683 N.E.2d 631, 632 (Ind. Ct.App.1997) (citations omitted), *trans. de-*

*nied.* The record sufficiently supports the inference that Wright witnessed the pursuit and that he promptly informed Robinson of the bust and told him to "grab the heat" while still under the stress of excitement caused by the startling event. Therefore, we conclude that the trial court did not err in admitting Wright's statements.[12]

### III. Sufficiency of Evidence to Support Attempted Murder Convictions

■ Robinson contends that his convictions for the attempted murder of Koons and Goodin are based on insufficient evidence, particularly with respect to the essential element of his specific intent to kill them. Our well-settled standard for reviewing the sufficiency of evidence prohibits us from reweighing the evidence and judging the credibility of witnesses. *See Graham v. State,* 713 N.E.2d 309, 311 (Ind. Ct.App.1999), *trans. denied.* Rather, we examine the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.* "[C]ircumstantial evidence may be sufficient to support a conviction." *Butler v. State,* 622 N.E.2d 1035, 1039 (Ind.Ct.App.1993), *trans. denied* (1994). "[E]ven when the verdict rests on circumstantial evidence, we need not find the circumstantial evidence adequate to negate every reasonable hypothesis of innocence but only that the inferences that may reasonably be drawn from the evidence are sufficient to enable the trier of fact to find guilt beyond a reasonable doubt." *Thornton v. State,* 712 N.E.2d 960, 963 (Ind.1999).

■ To convict a defendant of attempted murder, the State bears the burden of showing that the appellant "was acting with specific intent to commit the crime of murder and that he engaged in an overt act which constituted a substantial

---

**12.** Even assuming, *arguendo,* that Wright's statement to "grab the heat" was only marginally related to the officers' pursuit of Stewart, the admission of this statement can only be considered harmless given the substantial independent evidence of Robinson's guilt as

to the attempted murder and handgun possession charges. *See Harvey v. State,* 719 N.E.2d 406, 409 (Ind.Ct.App.1999). We shall address this harmless error analysis in greater detail in our discussion of issue VII.

step toward the commission of the crime." *Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990). "The requisite intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death." *Id.* As did the appellant in *Davis*, Robinson essentially "offers the fact that the shots did not strike the officer[s] to demonstrate that he had no intent to kill [them]." *Id.* We reject Robinson's self-serving argument.

When Wright informed Robinson of Stewart's arrest, Robinson stated that he was "tired of bein' messed with." Shortly thereafter, Burrell saw both men firing weapons toward the parking lot from Robinson's porch. Goodin and Koons observed muzzle flashes emanating from behind a fence attached to Robinson's apartment building. Bullets kicked up gravel onto Goodin's car and struck the pavement within a yard of where the officers took cover. Spent shell casings found outside Robinson's apartment matched two of the weapons seized from his attic. Robinson's fingerprint was found on one of the handguns, and gunshot primer residue was detected on his right palm. The fact that the officers hid behind a car and that neither they nor the car was struck by bullets "obviously did not convince the jury that there was no intent [to kill] nor does it convince us." *See id.*

## IV. Sufficiency of Evidence to Support Criminal Gang Activity Conviction

Robinson also contends that his criminal gang activity conviction is supported by insufficient evidence. We addressed the same contention in *Trice v. State*, 693 N.E.2d 649, 651 (Ind.Ct.App. 1998):

> In order to convict a defendant of criminal gang activity, the State must prove beyond a reasonable doubt that the individual (1) is an active member of a group with five or more members which, promotes, sponsors, assists in, or participates in or requires as a condition of membership or continued membership the commission of a felony or an act that would be a felony if committed by an adult ..., (2) has knowledge of the group's criminal advocacy, and (3) has a specific intent to further the group's criminal goals.

(citing IND.CODE §§ 35–45–9–3 and 35–45–9–1). We agree with Robinson's assertion that aside from a police officer's testimony about the size and illegal activities of the Vice Lords gang and his belief that Robinson was a member, the State presented no substantive evidence of a nexus between his alleged gang membership and the crimes for which he was charged and convicted. *See Trice*, 693 N.E.2d at 651 (State failed to establish nexus between defendant's alleged gang membership and battery).

The State argues that Robinson fired at the police to further Stewart's commission of felony cocaine delivery with an intent to further the criminal acts of the Vice Lords, but the State presented no evidence at trial to indicate that Stewart was a member of the Vice Lords, or that the cocaine sale was anything but a strictly "private" transaction between Stewart and the undercover officer. Moreover, there is no evidence to indicate that the crack cocaine Stewart sold to the police was cooked in Robinson's apartment by a Vice Lords gang member, or that Robinson knew of the gang's criminal advocacy and specifically intended to further its criminal acts by firing at Koons and Goodin. Therefore, we reverse Robinson's conviction for criminal gang activity.

## V. Motion to Sever Criminal Gang Activity Charge

Because we reverse Robinson's conviction on this charge, we need not address this issue in great detail. Nevertheless, we observe that where, as here, "offenses are joined as being part of a single scheme or plan, it is within the trial court's discretion to grant severance when it is 'appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.'" *Harvey v. State*, 719 N.E.2d 406, 409 (Ind.Ct.App.1999) (citing IND.CODE § 35–34–1–11(a)). In determining whether to grant severance in such

a case, the trial court considers " '(1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.' " *Harvey,* 719 N.E.2d at 409 (citing IND.CODE § 35–34–1–11(a)(1)–(3)). "Whether charges are severed under [Indiana Code Section] 35–34–1–11(a) is within the sound discretion of the trial court and will be upheld absent a showing of clear error." *Harvey,* 719 N.E.2d at 409. Robinson has failed to demonstrate that the trial court clearly erred in denying his motion to sever, and he has also failed to present any evidence that " 'in light of what actually occurred at trial, the denial of a separate trial subjected him to . . . prejudice.' " *Id.* (citations omitted). We find no error here.

### VI. Criminal Gang Activity Instruction

Because we reverse Robinson's conviction on this charge, we do not reach this issue.

### VII. Admission of Evidence under · Motive Exception to Indiana Evidence Rule 404(b)

■ Finally, Robinson asserts that the trial court erred in admitting the following evidence: (1) Burrell's testimony that she saw someone cooking cocaine in Robinson's kitchen on the morning of the bust; (2) photographs of Robinson in gang attire and the letter allegedly written by Robinson that police seized from his apartment; and (3) evidence of his possession of cocaine offered by the State during his attempted murder trial. Given our reversal of Robinson's criminal gang activity conviction, we need not devote considerable attention to this argument. A trial court's admission of evidence is subject to a harmless error analysis:

An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. Reversal is required only if the record reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction.

*Newman v. State,* 719 N.E.2d 832, 837–38 (Ind.Ct.App.1999) (citations omitted), *trans. denied* (2000). Even if the trial court erred in admitting Burrell's testimony on all three occasions,[13] the record contains substantial independent evidence supporting Robinson's convictions for attempted murder and possession of a handgun with an obliterated serial number. We have already discussed the substantial evidence supporting Robinson's attempted murder convictions, and police detected his fingerprint on a Haskell automatic pistol with an obliterated serial number that was seized from his attic.[14] Thus, any error in the admission of this evidence must be considered harmless.

We affirm Robinson's convictions for attempted murder, possession of cocaine, and possession of a handgun with an obliterated serial number and reverse his conviction for criminal gang activity.

Affirmed in part and reversed in part.

DARDEN, J., and MATTINGLY, J. concur.

---

**13.** During his trial for . attempted murder, Robinson objected only to the admission of a photograph showing the contents of the cooler and not to testimony regarding the discovery of the cocaine.

**14.** We note that the State was unable to identify any of the shell casings recovered from the scene as having been fired from the Haskell pistol, but was able to match them with two of the other firearms found in Robinson's attic.