## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 7:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Genaro Garcia,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 25, 2017<br><br>Court of Appeals Case No.<br>28A01-1604-CR-762<br><br>Appeal from the Greene Superior Court<br><br>The Honorable Dena A. Martin, Judge<br><br>Trial Court Cause No.<br>28D01-1508-F1-01 |

**Pyle, Judge.**

# Statement of the Case

[1] Genaro Garcia ("Garcia") appeals his conviction by jury of child molesting as a Level 1 felony[1] as well as the forty-year sentence imposed thereon. He argues that: (1) the trial court abused its discretion when it granted the State's Indiana Criminal Rule 4(D) motion to continue the trial; (2) the trial court abused its discretion in admitting evidence; (3) fundamental error occurred when the trial court admitted the victim's testimony without determining whether she was a competent witness; (4) there is insufficient evidence to support his conviction; and (5) his sentence is inappropriate. Finding no error, we affirm Garcia's conviction and sentence.

[2] We affirm.

# Issues

1. Whether the trial court abused its discretion when it granted the State's Indiana Criminal Rule 4(D) motion to continue the trial.

2. Whether the trial court abused its discretion in admitting evidence.

3. Whether fundamental error occurred when the trial court admitted the victim's testimony without determining whether she was a competent witness.

---

[1] IND. CODE § 35-42-4-3.

4.      Whether there is sufficient evidence to support Garcia's conviction.

5.      Whether Garcia's sentence is inappropriate.

## Facts

The facts most favorable to the verdict reveal that in June 2015, Brandy Corlett, ("Mother"), drove her five-year-old daughter, E.T. ("E.T."), and forty-five-year-old Garcia, a long-time family friend, from Spencer to Solsberry to visit family and friends. They stopped at the trailer where Mother's sisters, Shelby ("Shelby") and Sara ("Sara") Newton (collectively "the Newtons"), lived with Sara's boyfriend, Cameron Marling ("Marling"). An intoxicated Garcia was drinking from a half-gallon bottle of vodka. Shortly after arriving in Solsberry, Mother went out with Sara and left E.T. with Garcia at the Newtons' trailer. Shelby took a nap, and Marling went to a back bedroom to watch television.

While Mother was out, Garcia decided to walk down the lane and visit some friends who lived in a nearby trailer. E.T. followed Garcia, and when they reached a tree-lined area, Garcia pulled E.T. to the side of the lane, sat her down, pushed her underwear to the side, and licked her vagina. Thereafter, E.T. followed Garcia to Garcia's friend's trailer. Garcia entered the trailer but made E.T. wait outside. E.T. subsequently ran back to the Newtons' trailer. Alan Dixon ("Dixon"), who was sitting on his front porch, noticed a crying E.T. run by his trailer. Janice Corbin's video camera on the exterior of her trailer also filmed E.T. running down the lane.

When she arrived at the Newtons' trailer, E.T. "busted through the door . . . and was hysteric[al]." (Tr. 321). When Marling asked E.T. what was wrong, she responded that Garcia "licked her . . . and . . . grabbed her vagina area." (Tr. 331). Marling, who went searching for Garcia and found him at the friend's trailer, punched Garcia twice. Garcia asked "what was that for," and Marling responded, "you know what that was for." (Tr. 332). Garcia did not respond.

Marling called Mother to tell her what had happened, and Mother quickly returned to the Newtons' trailer. As soon as Mother pulled up in front of the trailer, a crying E.T. ran out to the car. Mother went to look for Garcia and found him walking down the lane with a baseball bat. Mother jumped out of the car and told him that he was going to go to jail. After he told her that he had not done anything, Mother grabbed the baseball bat and began hitting him with it.

Green County Sheriff's Department Deputy Brain Woodall ("Deputy Woodall") was dispatched to the Newtons' trailer, where he arrested an intoxicated Garcia. In the meantime, Mother drove E.T. to St. Vincent Hospital in Indianapolis. Sexual assault nurse examiner Megan Merriman, ("Nurse Merriman"), who has special training in assessing and examining child sexual abuse victims, met with E.T. Nurse Merriman discussed the sexual abuse with E.T. and explained that she was a nurse who was there to help E.T. The five-year-old girl told Nurse Merriman that she had taken a walk with Garcia, and he had told her "to show [her] pee pee and then he started licking

[her] butt. [She] told him to stop it and he didn't stop . . . ."[2] (Tr. 412-13). Nurse Merriman also collected E.T.'s one-piece dress that snapped at the crotch and took swabs from her genitals. The genital swabs tested positive for amylase, which is found in saliva and other body fluids, and the crotch of the dress contained DNA that was consistent with Garcia's DNA.

[8] The State charged Garcia with Level 1 felony child molesting on August 3, 2015, and on September 21, 2015, the trial court set Garcia's jury trial for December 1, 2015. In October 2015, the State filed a motion for a continuance because Nurse Merriman, a critical State's witness, was on maternity leave until the end of January 2016. The trial court granted the motion and scheduled the trial for February 9, 2016. Three days later, Garcia filed a motion for a speedy trial, which would have required the State to try him by January 4, 2016. The State responded with a Criminal Rule 4(D) motion asking the trial court to "reaffirm the February 9th trial date due to the State's essential witness being unavailable for trial during the 70-day speedy trial window." (App. 74). The trial court granted the State's motion after a hearing.

[9] Garcia's trial began as scheduled on February 9, 2016. Before E.T. gave her substantive testimony at trial, the State asked her several questions to demonstrate her competency. Thereafter, E.T. testified that Garcia moved her underwear to the side and "licked her . . . private parts . . . ." (Tr. 252). Also at

---

[2] E.T. referred to her vagina both as her "pee pee" and her "butt." (Tr. 413).

trial, Garcia made a hearsay objection to Marling's testimony that E.T. had told him that Garcia had "licked her . . . and . . . grabbed her vagina area." (Tr. 331). Garcia also made a hearsay objection to Nurse Merriman's testimony that E.T. had told her that Garcia had told E.T. to "show [her] pee pee and then he started licking [her] butt." (Tr. 412).

[10] Following a four-day trial, the jury convicted Garcia of child molesting as a Level 1 felony. Evidence presented at the sentencing hearing revealed that Garcia has an extensive legal history that spans four states and almost thirty years. He has six felony and eleven misdemeanor convictions and has been twice unsatisfactorily terminated from probation. In addition, he was on parole when he molested E.T. After hearing the evidence, the trial court found no mitigating factors and the following aggravating factors: (1) E.T.'s age; (2) Garcia's position of trust with E.T.; (3) Garcia's probation violations; and (4) the fact that Garcia was on parole when he molested E.T. The trial court sentenced Garcia to forty (40) years. Garcia now appeals his conviction and sentence. Our discussion of the issue includes additional facts.

# Decision

## 1. Speedy Trial

[11] Garcia first argues that trial court abused its discretion when it granted the State's Indiana Criminal Rule 4(D) motion to continue the jury trial. We disagree.

[12]     When Garcia moved for a speedy trial, he invoked the procedures and
deadlines of Criminal Rule 4(B)(1), which provides in relevant part as follows:

> [i]f any defendant held in jail on an indictment or affidavit shall
> move for an early trial, he shall be discharged if not brought to
> trial within seventy (70) calendar days from the date of such
> motion, except where a continuance within said period is had on
> his motion, or the delay is otherwise caused by his act, or where
> there was not sufficient time to try him during such seventy (70)
> calendar days because of the congestion of the court calendar.

[13]     The Indiana Supreme Court has noted that "[t]he purpose served by Crim. R.
4(B) is to prevent a defendant from being detained in jail for more than 70 days
after requesting an early trial." *Williams v. State*, 631 N.E.2d 485, 486 (Ind.
1994). However, Criminal Rule 4(D) provides for an extension of the seventy-
day period. *Wilhelmus v. State*, 824 N.E.2d 405, 411 (Ind. Ct. App. 2005).
Specifically,

> If when application is made for discharge of a defendant under
> this rule, the court be satisfied that there is evidence for the state,
> which cannot then be had, that reasonable effort has been made
> to procure the same and there is just ground to believe that such
> evidence can be had within ninety (90) days, the cause may be
> continued, and the prisoner remanded or admitted to bail, and if
> he be not brought to trial by the state within such additional
> ninety (90) days, he shall then be discharged.

Ind.Crim. Rule 4(D). Moreover,

> [a]ny exigent circumstances may warrant a reasonable delay
> beyond the limitations of Crim. R. 4, due deference being given
> to the defendant's speedy trial rights under the rule. The
> reasonableness of such delay must be judged in the context of the

> particular case, and the decision of the trial court judge will not be disturbed except for an abuse of discretion. The purpose of Crim. R. 4(B) is to assure a speedy trial. This purpose is well served if the State must bring a defendant to trial within seventy days or show compelling reasons for the failure to do so. The rule was designed to assure criminal defendants speedy trials, not to provide them with a technical means of avoiding trial.

*Wilhelmus*, 824 N.E.2d at 412 (quoting *Smith v. State*, 802 N.E.2d 948, 951 (Ind. Ct. App. 2004)).

[14] Further, the absence of a key witness through no fault of the State is good cause for extending the time-period requirements for early trial. *Id.* at 413. "Rule 4(D) does not mandate the evidence be essential or unique, only that it be unavailable and that the State be entitled to present it." *Smith v. State*, 502 N.E.2d 485, 488 (Ind. 1987). For example, in *Sims v. State*, 267 Ind. 215, 368 N.E.2d 1352, 1354-55 (1977), the Indiana Supreme Court held that a key witness's vacation abroad was sufficient justification for invoking the 90-day extension under Rule 4(D). Additionally, in *Smith*, 802 N.E.2d at 952, this Court held that the trial court had not abused its discretion when it granted the State's motion to continue trial pursuant to Criminal Rule 4(D) where a key witness's father had died and the funeral was scheduled for the day before trial.

[15] Here, the State charged Garcia with Level 1 felony child molesting on August 3, 2015, and on September 21, 2015, the trial court set Garcia's jury trial for December 1, 2015. On October 22, 2015, the State filed a motion for a sixty-to ninety-day continuance. The State specifically explained that Nurse Merriman, a critical witness for the State, would be on maternity leave until the end of

January 2016. The trial court granted the State's motion the following day and reset Garcia's trial for February 9, 2016. Three days later, on October 26, 2015, Garcia filed a speedy trial motion pursuant to Indiana Rules of Criminal Procedure Rule 4.

[16] The State responded that pursuant to Garcia's motion, the trial would have to be held no later than the first week of January. However, the State further explained that it would be without Nurse Merriman, an essential witness, if the trial were held that week. The State asked the trial court to reaffirm the February 9 trial date pursuant to Criminal Rule 4(D) because Nurse Merriman was unavailable during the seventy-day speedy-trial window.

[17] At a hearing on Garcia's motion, the State explained that Nurse Merriman lived in Indianapolis and would have to travel a few hours to Green County to testify at Garcia's trial. According to the State "a person on maternity leave that's not working should [not] have to come to court to testify when we could do the whole thing a month later . . . ." (Tr. 16). Garcia's counsel, on the other hand, argued that "if she's had the child, and she may not be returned to work full time, but that doesn't mean she can't show up to testify one day for a couple of hours." (Tr. 16). The trial court concluded that Nurse Merriman would have three hours just in travel time. Further, based on the trial court's stressful personal experience of being required to attend a court proceeding within three weeks of giving birth to her child, the court found that Nurse Merriman was unavailable. The trial court therefore denied Garcia's motion to

for a speedy trial and granted the State's Rule 4(D) motion to continue the trial. The trial began on February 9, 2016.

[18] Based upon these facts, the trial court did not abuse its discretion when it determined that Nurse Merriman, a key State's witness who was on maternity leave and who would have been required to travel three hours to testify at Garcia's trail, was unavailable. We further note that the State brought Garcia to trial just over thirty days – rather than the ninety days permitted by Criminal Rule 4(D) – beyond the seventy-day early trial date. Based on these facts, the trial court did not abuse its discretion in granting the State's Rule 4(D) motion to continue the trial.

2. Admission of Evidence

[19] Garcia argues that the trial court abused its discretion in admitting evidence of E.T.'s statements to Marling and Nurse Merriman that Garcia had licked her vagina. Garcia specifically argues that "such evidence constituted inadmissible hearsay, as well as improper vouching evidence . . . ." (Garcia's Br. at 33.) At the outset, we note that Garcia has waived appellate review of the vouching argument because he did not raise it or argue it at trial. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (explaining that an objection for one evidentiary ground does not preserve another evidentiary ground for appeal). Garcia's only trial objection to the evidence about which he now complains was that the testimony from both witnesses was hearsay. (Tr. 324, 410). We now turn to the substance of Garcia's claims.

[20] A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). We review its rulings for an abuse of discretion, which occurs only if the decision was clearly against the logic and effect of the facts and circumstances. *Id.* Hearsay is an out-of-court statement offered to prove the truth of its contents. Ind. Evid. R. 801(c). Hearsay is generally inadmissible unless the statement falls within one of the established hearsay exceptions. Evid. R. 802. Evidence Rule 803 sets forth these exceptions.

[21] Garcia first contends that Marling's testimony that E.T. told him that Garcia had licked her vagina was inadmissible hearsay. The State responds that this testimony falls under the excited utterance exception to the hearsay rule.[3] For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event occurs; (2) a statement is made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. Evid. R. 803(2). Application of these criteria is not mechanical. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996). Rather, under Rule 803(2), the heart of the inquiry is whether the statement is inherently reliable because the declarant was under the stress of an event and unlikely to make deliberate falsifications. *Id.* The statement must be trustworthy under the

---

[3] Although the trial court concluded that E.T.'s statement to Marling was not hearsay and was admissible as a prior consistent statement pursuant to Evidence Rule 801(d)(1), we can affirm a trial court's hearsay ruling on any legal basis apparent in the record. *Robinson v. State*, 730 N.E.2d 185, 193 (Ind. Ct. App. 2000), *trans. denied*.

facts of the particular case. *Id.* The trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.*

[22] Garcia argues that the "foundational requirements were not met here." (Garcia's Br. at 41). Specifically, Garcia contends that "the record does not support a finding that E.T. was under the stress of excitement caused by the molestation when she allegedly made the statements to [Marling]." (Garcia's Br. at 41). Garcia further argues that E.T.'s "statements were in response to [Marling's] questions – another factor supporting a finding that her statement was not an excited utterance." (Garcia's Br. at 42).

[23] First, the greater the stress caused by a startling event, the longer the effects of the stress may last. *Jones v. State*, 800 N.E.2d 624, 629 (Ind. Ct. App. 2003). Here, the evidence shows that five-year-old E.T. was hysterical when she burst through the trailer door and immediately told Marling what had happened. This reaction suggests that she was not capable of thoughtful reflection and deliberation. *See id.* This evidence supports a reasonable conclusion that E.T. was still under the stress of excitement from the molestation.

[24] Second, a declaration does not lack spontaneity simply because it is an answer to a question. *Yamobi*, 672 N.E.2d at 1346. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event. *Id.* Here, Marling asked E.T. what was wrong because she had "busted through the door . . . and was

hysteric[al]." (Tr. 321). He did not further question E.T. or otherwise suggest a particular answer. This evidence also supports a reasonable conclusion that E.T. was still under the stress of excitement from the molestation when she hysterically busted through the trailer's front door. The trial court did not abuse its discretion in admitting Marling's testimony.

Garcia further argues that the trial court erred in admitting Nurse Merriman's testimony that E.T. told her that Garcia had licked her vagina. The State responds that this testimony falls within the hearsay exception for statements made for the purposes of medical diagnosis and treatment. *See* Evid. R. 803(4). The basis for this exception is that people seeking medical treatment have a strong incentive to tell the truth, and that therefore such statements are reliable. *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996). This exception encompasses statements made to non-physicians so long as the declarant makes the statement to advance a medical diagnosis or treatment. *Id.* In determining whether a statement is admissible pursuant to this rule, courts engage in a two-part test: "1) is the declarant motivated to provide truthful information in order to promote diagnosis and treatment; and 2) is the content of the statement such than an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *Id.*

Garcia challenges only the first prong of the test and claims that E.T.'s statements to Merriman do not fall within this exception to the hearsay rule because "E.T.'s motive in making the statements was not to promote diagnosis and treatment; it was to comply with the request of the adults investigating the

alleged molestation for purposes of prosecuting Garcia." (Garcia's Br. 43-44). We addressed this same argument in *Cooper v. State*, 714 N.E.2d 689 (Ind. Ct. App. 1999), *trans denied*. There, we concluded that because the child was told that she was in the emergency room to discuss and be treated for sexual abuse and understood the role of the nurse in this treatment, the first prong of the two-part test was met, and the nurse's testimony was admissible under the medical diagnosis exception to hearsay. *Id*. at 693. Here, as in *Cooper*, Nurse Merriman, who has special training in assessing and examining child sexual abuse victims, discussed the sexual abuse with E.T. and explained that she was a nurse who was there to help E.T. As in *Cooper*, the first prong of the two-part test was met, and Nurse Merriman's testimony was admissible under the medical diagnosis exception to hearsay. The trial court, therefore, did not abuse its discretion in admitting it.

### 3. Competency

[27] Garcia also argues that the trial court improperly admitted E.T.'s testimony without determining whether she was a competent witness. Because Garcia did not object to E.T.'s competency at trial, he has waived appellate review of this argument. *See Kochersperger v. State,* 725 N.E.2d 918, 922 (Ind. Ct. App. 2000) (explaining that a defendant's failure to object to a child's testimony at trial results in waiver of any question of the of the competency of the child as a witness).

[28] In an attempt to avoid waiver, Garcia argues that the trial court committed fundamental error. This doctrine allows an appellate court to review an

unpreserved error. *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002). A fundamental error is a "substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." *Carter v. State*, 754 N.E.2d 877, 881 (Ind. 2001). It applies only when the actual or potential harm cannot be denied. *Id.* The error must be "so prejudicial to the rights of a defendant as to make a fair trial impossible." *Id.*

[29] The trial court has discretion to determine if a child witness is competent based on the judge's observation of the child's demeanor and responses to questions posed by counsel and the court. *Haycraft v. State*, 760 N.E.2d 203, 209 (Ind. Ct. App. 2001). A trial court's determination that a child is competent will only be reversed for an abuse of that discretion. A child's competency to testify at trial is established by demonstrating that she: (1) understands the difference between telling a lie and telling the truth; (2) knows she is under a compulsion to tell the truth; and (3) knows what a true statement actually is. *Kien v. State*, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007), *trans. denied*. "'To be qualified to testify, a child need not be a model witness, have an infallible memory, or refrain from making inconsistent statements.'" *Id.* (quoting *Casselman v. State*, 582 N.E.2d 432, 435 (Ind. Ct. App. 1991)).

[30] Here, our review of the evidence reveals that before E.T. gave her substantive testimony, the State asked her questions to demonstrate her competency. Specifically, the prosecutor asked E.T. the color of his shirt. E.T. responded that it was white. The prosecutor then asked E.T. if he were to tell her that it was an orange shirt, would that be the truth or a lie. E.T. responded that it

would be a lie. When the prosecutor asked her if he were to tell her that a certain piece of paper was yellow, would that be the truth or a lie, E.T. responded that it would be the truth. When the prosecutor asked E.T. if the trial judge had told her that she had to tell the truth, she responded that the judge had told her that and that she was going to tell the truth. E.T. then reaffirmed that she knew the difference between the truth and a lie.

[31] E.T.'s competency was established when she demonstrated that she understood the difference between telling a lie and telling the truth, knew that she was under a compulsion to tell the truth, and knew what a true statement actually was. The State is correct that the "inconsistencies and memory lapses in E.T.'s testimony that Garcia highlights go 'to her credibility, not to her competency.'" *See Kien*, 866 N.E.2d at 385. We find no error, fundamental or otherwise.

### 4. Sufficiency of the Evidence

[32] Garcia further argues that there is insufficient evidence to support his Level 1 felony child molesting conviction. Our standard of review for sufficiency of the evidence claims is well-settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh the evidence or judge witness credibility. *Id.* We will affirm the conviction unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id.* at 147.

[33] To convict Garcia of Level 1 child molesting as charged, the State was required to prove beyond a reasonable doubt that Garcia, a person of at least twenty-one years of age, knowingly or intentionally performed other sexual conduct with E.T., a child under fourteen years of age. I.C. § 35-42-4-3. Other sexual conduct includes "an act involving . . . a sex organ of one (1) person and the mouth . . . of another person." I.C. § 35-31.5-2-221.5.

[34] At the outset, we note that E.T. testified that Garcia placed his mouth on her vagina. The testimony is sufficient to support Garcia's conviction. *See Hubbard v. State*, 719 N.E.2d 1219, 1220 (Ind. 1999) (explaining that the testimony of the victim, who was the sole eyewitness, was sufficient to support defendant's convictions). Garcia acknowledges this point, *see* (Garcia's Br. 55), but he nevertheless argues that the incredible dubiosity rule dictates that his conviction must be reversed.

[35] The incredible dubiosity rule provides that a court may impinge on the jury's responsibility to judge witness credibility only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Carter v. State*, 31 N.E.3d 17, 30-31 (Ind. Ct. App. 2015). Application of this rule is rare, and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Id.* Cases where we have found testimony to be inherently improbable have involved situations where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," or where the witness was so equivocal

about the act charged that her uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part*, 575 N.E.2d 624 (Ind. 1991).

[36] Our review of the evidence makes it clear that the incredible dubiosity rule simply does not apply in this case. First, to the extent that Garcia argues that E.T.'s testimony was inherently improbable, we agree with the State that "it is [unfortunately] not beyond belief that a man can take a five-year-old girl to some trees in the middle of the day to molest her." (State's Br. 32). Further, to the extent that Garcia argues that E.T.'s testimony was equivocal, we note that E.T. never wavered in her testimony that Garcia had licked her vagina. We further note that E.T.'s testimony was consistent with her reports of abuse to Marling and Nurse Merriman, and that DNA evidence also corroborated E.T.'s testimony.

[37] The jury had the opportunity to hear E.T.'s testimony and to determine her credibility. We decline Garcia's invitation to impinge on the province of the jury and reassess that credibility. The State presented sufficient evidence to convict Garcia of Level 1 felony child molesting.

## 5. Inappropriate Sentence

[38] Lastly, Garcia argues that his forty-year sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the

sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[39] The Indiana Supreme Court has further explained that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character.)" *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[40] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Garcia was convicted of Level 1 child molesting. The sentencing range for a Level 1 felony child molesting conviction when the defendant is at least twenty-one years old and the victim is less than twelve years old is between twenty (20) and fifty (50) years, with an advisory sentence of thirty (30) years. *See* I.C. § 35-50-2-4(c)(1). Here, the trial court sentenced Garcia to forty (40)

years, which is ten (10) years less than the maximum sentence and ten (10) years more than the advisory sentence.

[41] With regard to the nature of the offense, forty-six-year-old Garcia moved five-year-old E.T.'s underwear to the side and licked her vagina while she was in his care. With regard to the nature of Garcia's character, he has a thirty-year criminal history that spans four states and includes eleven misdemeanor and six felony convictions. Garcia has twice been unsatisfactorily discharged from probation and was on parole at the time he molested E.T. His former contacts with the law have not caused him to reform himself. *See Jenkins v. State*, 909 N.E.2d 1080, 1086 (Ind. Ct. App. 2009), *trans. denied*. As a result, Garcia has failed to persuade this Court that his forty-year sentence for his Level 1 felony child molesting conviction is inappropriate.

[42] Affirmed.

Baker, J., and Mathias, J., concur.